**Appeal of Gary and Suzanne GREGOIRE**

**(Town of Colchester, Appellant)**

[742 A.2d 1232]

No. 98-508

October 21, 1999. The Town of Colchester appeals a decision of the Environmental Court granting summary judgment to camp owners Gary and Suzanne Gregoire and denying summary judgment to the Town. The court held that the camps owned by the Gregoires were not subject to Colchester zoning regulations that prohibit the resumption of nonconforming uses after abandonment. We disagree and remand for a determination of whether the camps' nonconforming-use status has been abandoned within the meaning of the applicable zoning requirements.

This is the second time this Court has had occasion to review the application of Colchester zoning regulations to the lot and its camps. We previously observed that the lot in question did not conform to zoning requirements because it contained multiple structures, but upheld the decision of the Chittenden Superior Court

---

there was no acceptance, and our review should be limited to that issue.

that the former landowners (Beverly and Debra Lowe) did not need a zoning or subdivision permit to convert the six single-family rental camps on the lot to condominium ownership. See *In re Lowe*, 164 Vt. 167, 666 A.2d 1178 (1995).

The camps at issue — known as "Camp Mike" and "The Birches" respectively — are located on a single lot approximately 40,000 square feet in size. The structures are two of six camp buildings constructed on the same lot several decades ago. The camps were converted to condominiums in 1996, and in 1997 the Gregoires purchased Camp Mike and The Birches from the Lowes. Following their purchase, the zoning administrator informed the Gregoires by letter that the two camps had lost their pre-existing, nonconforming status through abandonment. The Colchester Zoning Board of Adjustment (ZBA) upheld the zoning administrator's determination, and the Gregoires appealed to the Environmental Court. The Environmental Court reversed the ZBA decision, concluding that it would be "manifestly unfair" to construe the new provisions of the 1997 Colchester zoning regulations to make them applicable to abandonments that occurred prior to the effective date of the 1997 regulations.

The Town appeals, contending that the 1997 zoning regulations allow only the continuation of nonconforming uses that lawfully existed under previous applicable ordinances. Camp Mike and The Birches cannot, according to the Town, be considered lawfully existing nonconforming uses as of 1997, because, asserts the Town, the nonconforming use status was lost through abandonment of the camps prior to the adoption of the 1997 zoning ordinance.[1]

We begin by noting that the parties submitted to the Environmental Court a stipulated statement of material facts.[2] The parties agreed that (1) the camps at issue were constructed and occupied prior to the enactment of any Colchester zoning regulations and (2) the camps are located in the R-2 district of the Colchester zoning ordinance, within which seasonal dwelling units are permitted uses. The parties differ sharply, however, on what constitutes "use" for purposes of deciding the applicability of the Colchester zoning regulations to the stipulated facts.

The Town contends that the "use" at issue — and the use that it claims has been abandoned with respect to Camp Mike and The Birches — is the use of the lot as a situs for multiple detached single family dwellings. Since 1976, the

---

A non-conforming use of a building or premises which has been abandoned shall not, thereafter, be returned to such non-conforming use. A non-conforming use shall be considered abandoned when:

(a). The intent of the owner to discontinue the use is apparent.

(b). The characteristic equipment and furnishings of the nonconforming use have been removed from the premises and have not been replaced by similar equipment within six (6) months.

(c). It has been replaced by a conforming use.

(d). It has been changed to another use under proper permit.

Colchester Zoning Regulations § 1801(7) (1982).

[2] Although both parties filed motions for summary judgment, the Town acknowledges in its reply brief filed with this Court that material facts relating to its claim of abandonment were neither stipulated to by the parties nor found by the Environmental Court.

---

[1] The Town contends that abandonment occurred "in or about 1991." The Colchester zoning regulations on abandonment then in effect read:

Colchester zoning regulations have contained a provision that restricts the use of a single lot to a single building (and its accessories), except as a subdivision:

> Every building and its accessories hereafter erected or structurally altered, or every use, shall be located on a lot, and in no case shall there be more than one such building or use on one lot, except as a subdivision.

Colchester Zoning Regulations § 11.14 (1976) (currently § 1808). The contemporary Colchester zoning regulations, effective September 9, 1997, allow "any nonconforming use which lawfully existed at the time of the passage of this or any prior ordinance . . . may be continued." Colchester Zoning Regulations § 1801 (1997). While conceding that the six-camp lot was a preexisting nonconforming use as a lot containing multiple detached single-family dwellings and as such could continue indefinitely in "grandfather status," the Town maintains that a part of the grandfathered use has been lost through the abandonment of Camp Mike and The Birches.[3] Thus, asserts the Town, the attempt by the Gregoires to resurrect an abandoned use must fail because the Colchester zoning regulations allow only the continuation of nonconforming uses that lawfully existed at the time of the passage of the 1997 regulations.

The Gregoires reject the rationale by which the Town attempts to bring them within the ambit of the "non-complying use" regulation. The camp owners argue that the "use" in question is only the use

to which the camps are put. The Gregoires note that the camps have always been used as seasonal dwelling units; that the Town admits that seasonal dwelling has always been an appropriate use for the camps under past and current Colchester zoning regulations; and it therefore follows as a matter of logic and law that the attempt to apply the "nonconforming use" regulations (of which abandonment are a part) must fail because the camps' "use" as seasonal dwelling units has never been a nonconforming use. The Environmental Court agreed with the Gregoires that the "use" in question was a permitted, seasonal residential use, not, as the Town contends, use of a lot for multiple single family dwellings.

We are bound by an Environmental Court construction of a zoning ordinance unless it is clearly erroneous, arbitrary or capricious. See *Houston v. Town of Waitsfield*, 162 Vt. 476, 479, 648 A.2d 864, 865 (1994). The prime purpose behind zoning is to bring about the orderly physical development of a community by confining particular uses to defined areas. See *Vermont Brick & Block, Inc. v. Village of Essex Junction*, 135 Vt. 481, 483, 380 A.2d 67, 69 (1977). A goal of zoning is to gradually eliminate nonconforming uses because they are inconsistent with the purpose of developing use-consistent areas in communities. See *In re McCormick Management Co.*, 149 Vt. 585, 589, 547 A.2d 1319, 1322 (1988).

We believe the Environmental Court's construction of the Colchester zoning ordinance was error. In determining whether the "use" in question was a nonconforming use at the time of the effective date of the 1997 Colchester zoning regulations, the Environmental Court limited its considerations to the *use of the buildings* as seasonal dwellings. The Town correctly asserts that the court's narrow interpretation of "use" failed to consider whether the Town's regulation of the *use of land* brought the Gregoires'

---

[3] The Town concedes that the four other camps — not a subject of this litigation — retain their preexisting nonconforming use status because there has been no abandonment of use as to those camps under either the 1982 or 1997 Colchester zoning regulations.

camps within the ambit of restrictions relating to "noncomplying use." Pursuant to 24 V.S.A. § 4408(a)(1), "nonconforming use" means "*a use of land or a structure which does not comply with all zoning regulations* where such use conformed to all applicable laws, ordinances and regulations prior to the enactment of such regulations." (emphasis added).

We interpret a zoning ordinance under familiar rules of statutory and ordinance construction. Words in statutes and ordinances should be given their plain meaning. See *In re Stowe Club Highlands*, 164 Vt. 272, 279, 668 A.2d 1271, 1276 (1995) (when interpreting zoning ordinances, court construes words according to their plain and ordinary meaning, giving effect to whole and every part of ordinance). We adopt a construction that implements the legislative purpose. See *id.* at 281, 668 A.2d at 1277.

Here, there was a failure to construe the term "nonconforming use" to give effect to the whole ordinance. The Environmental Court characterized the Town's effort to regulate the Gregoires' property as an issue implicating noncomplying structures. But as the Town emphasized, the issue involved more than the allowable restoration of noncomplying structures.[4] The question is whether

— assuming proof of abandonment — the Colchester zoning regulations were intended to prevent the addition of two more single-family dwellings on a lot already being used for four attached single-family dwellings. The term "nonconforming uses" is defined in the 1997 Colchester zoning regulations as "those uses which do not conform with the use regulations set forth in this ordinance." Colchester Zoning Regulations § 1801 (1997). The plain and ordinary meaning of the definition applied to the matter before us compels the conclusion that the camps in question are nonconforming uses.

The public interest in the regulation and gradual elimination of nonconforming uses is strong, see *Hinsdale v. Village of Essex Junction*, 153 Vt. 618, 626, 572 A.2d 925, 930 (1990), and zoning provisions allowing nonconforming uses should be strictly construed. See *Hartley v. City of Colorado Springs*, 764 P.2d 1216, 1224 (Colo. 1988). By their very nature, nonconforming uses, defined as "'a use of land or a structure which does not comply with all zoning regulations' where such use was proper prior to the enactment of the regulations," *Vermont Brick & Block*, 135 Vt. at 482, 380 A.2d at 69 (quoting 24 V.S.A. § 4408(a)(1)), are inconsistent with that purpose. Such uses are recognized and permitted to continue, simply by virtue of their existence prior to the enactment of the ordinance. See *DeWitt v. Brattleboro Zoning Bd. of Adjustment*, 128 Vt. 313, 319, 262 A.2d 472, 476 (1970). However, their extension is carefully limited, since the ultimate goal of zoning is to gradually eliminate them. See *Brassard Bros. v. Barre Town Zoning Bd. of Adjustment*, 128 Vt. 416, 419, 264 A.2d 814, 816 (1970). Indeed, the 1997 Colchester zoning regulations echo this, stating that "[i]t is considered desirable and in the best interest of the Town to encourage

---

[4] Both parties agree that Camp Mike and The Birches are noncomplying structures because they do not comply with "dimensional requirements" of the regulations, including setbacks from the road and lake. There is no question here that the camps' noncomplying structure status has not been abandoned under either the 1982 or 1997 Colchester zoning regulations, but that fact has no effect on the nonconforming use question at issue here. See *Town of Brighton v. Griffin*, 148 Vt. 264, 270, 532 A.2d 1292, 1295 (1987) ("Although a preexisting noncomplying structure may remain in place, once a nonconforming use of that structure is abandoned or discontinued, state law con-

templates that a municipality may prohibit resumption of such use.").

nonconforming uses to change to conforming uses." Colchester Zoning Regulations § 1801 (1997).

The Gregoires assert that notwithstanding a determination that the noncomplying use provision of the Colchester zoning regulations applies to Camp Mike and The Birches, there can be no application of the abandonment provision because the Town concedes that the lot still retains grandfathered noncomplying use status by virtue of the continuing use of the lot by the other four camps. In the circumstances of this case, we conclude that it is possible for a single lot containing independent multiple nonconforming uses of land to be subject to an abandonment claim. In short, it is conceivable that Camp Mike and The Birches could have lost their nonconforming-use status through abandonment even while the other four camps retained their status because they were continually used in a nonconforming manner.

Although the facts of this case are uncommon, we observe that a single location can be the source of multiple nonconforming uses. See *In re Newton Enterprises*, 167 Vt. 459, 460, 708 A.2d 914, 915 (1998) (service station used as gas station, convenience store, and grill); *In re Porter Med. Assocs. Use Change Permit*, 139 Vt. 132, 133, 423 A.2d 491, 491 (1980) (office building used for physicians' office required use change permit where owner sought to use part of building for pharmacy); *Cape Resort Hotels, Inc. v. Alcoholic Licensing Bd. of Falmouth*, 431 N.E.2d 213, 215-17 (Mass. 1982) (hotel used as both hotel and entertainment complex). The appropriate balance between the view that uncertainties in zoning ordinances must be construed in favor of the property owner, see *In re Vitale*, 151 Vt. 580, 584, 563 A.2d 613, 616 (1989), and the rationale that the public interest is advanced by the gradual elimination of nonconforming uses, see *Hinsdale*, 153 Vt. at 626, 572 A.2d at 930, is best served by an approach that neither forbids a municipality from asserting that fewer than all noncomplying uses have been abandoned, nor compels a property owner to surrender all nonconforming use status where fewer than all uses have been abandoned. The law nevertheless generally views nonconforming uses as detrimental to a zoning scheme and overriding public policy. See *Toys "R" Us v. Silva*, 676 N.E.2d 862, 865 (N.Y. 1996). We conclude that under the facts of this case, the Town has the authority to apply its zoning regulations, including the provision relating to nonconforming uses and abandonment, to Camp Mike and The Birches.

Finally, the Gregoires contend that even if an abandonment inquiry is appropriate, it cannot be shown that the Gregoires ever abandoned the nonconforming use status of Camp Mike and The Birches. While that may be so, as subsequent purchasers of the camps, the Gregoires can be bound by the abandonment of a nonconforming use status by the previous owners. See *Town of Brighton*, 148 Vt. at 266, 532 A.2d at 1293 (purchaser of gas station was held to abandonment of nonconforming use status of previous owners). Whether the Town can factually demonstrate that the previous owners of Camp Mike and The Birches abandoned the nonconforming use status of the camps has yet to be decided by the Environmental Court, and we remand for that purpose.

*Reversed and remanded.*