### In re Appeal of Edward LASHINS

[807 A.2d 420]

No. 01-134

July 5, 2002. Edward Lashins appeals the environmental court order authorizing Timothy Gore to reopen a children's summer camp as a pre-existing and conditional use under the Town of Wilmington's zoning ordinance. Appellant maintains that Gore's proposed summer camp is actually a nonconforming use subject to a discontinuance provision included in the ordinance that prohibits resurrecting nonconforming uses once those uses have changed to permitted uses. We agree with appellant and, therefore, reverse the environmental court order and remand the matter to the Wilmington Zoning Board of Adjustment (ZBA) for complete review of Gore's application under the

Wilmington zoning ordinance's conditional use criteria.

In 1967 Gore's grandparents owned and operated a children's summer camp, known as Camp Najerog, on more than 300 acres of land they owned on Lake Raponda in Wilmington, Vermont. A year later the summer camp closed down. Except for a six acre piece of property acquired by Gore's parents, most of the land was conveyed to a real estate development corporation that subdivided and sold parcels of the land for vacation and residential uses. The development corporation later defaulted on its mortgage, held by the estate of Gore's deceased grandmother, and after foreclosure proceedings, Gore eventually received ninety-three acres of land. On behalf of himself and his parents, Gore applied for a conditional use permit before the ZBA to open the "Najerog Environmental Learning Center" on his ninety-three acre parcel and his parents' six acre parcel.

Appellant owns property that was once a part of Camp Najerog's 300 acres and now borders a thirty acre portion of Gore's property on Lake Raponda. This portion of Lake Raponda, while not a wilderness area, is a heavily wooded lakeshore enjoying a high degree of seclusion and privacy. This appeal arises out of appellant's concern that the proposed summer camp will change the wild character of the area by overcrowding the lake and shoreline, generating excessive noise and water pollution, and posing a threat of forest fires from campfires, and vandalism and trespass by teenage campers. Appellant, therefore, seeks to have Gore's entire proposed development reviewed under the Town of Wilmington's zoning ordinance § 7 conditional use criteria.

In 1968, the last year of Camp Najerog's operation, the Town of Wilmington adopted a zoning ordinance which continues in effect, and unchanged, to this day. Section 3(a) of the ordinance is at issue in this appeal. It reads, in relevant part:

> This ordinance shall not apply to existing buildings and structures nor to the existing use of any building or structure or of land to the extent to which they were used at the time of the adoption of this ordinance. Once a non-conforming use is changed to a use permitted in the district where it is located, then it may not be changed back to a non-conforming use. However, nothing herein contained shall prevent the substantial restoration within two years and the continued use of a restored non-conforming building or structure damaged by fire or other casualty.

The parties agree that the effect of the first clause of § 3 is to grandfather Camp Najerog as it existed in 1968. The parties disagree, however, whether the second clause, prohibiting resurrection of a non-conforming use once that use has been changed to a permitted use, applies to Gore's application for a children's summer camp on his land.*

Gore initially applied for, and received, a conditional use permit from the Wil-

---

* Throughout the course of this litigation, it appears that Gore's conditional use permit application changed from an application for a year-round environmental learning center serving both children and adults to an application for a summer camp strictly for children — one of the conditional uses specifically enumerated under § 7 of the Town of Wilmington's zoning ordinance. While discrepancies between the two applications were the focus of much of the environmental court's attention below, our resolution of this case does not require us to address this issue.

mington ZBA for a business venture called the "Najerog Learning Center," which would operate on a year-round basis and serve both children and adults. Lashins appealed to the environmental court. The court's order found the Wilmington town ordinance § 3(a) provision "unusual," in that, according to the court, it lacked a discontinuance or abandonment provision which "would prevent a landowner's return to a use existing as of March 5, 1968, even if the use had been discontinued for some period of time." Finding that the ordinance "at least potentially" allows Gore to return the land to its summer camp use as it existed in the season preceding 1968, the court held that to the extent property was used for a children's camp in 1968, no conditional use permit was required. The court further held that should Gore wish to expand the use of the property beyond the level of activity for which the land was used prior to 1968, he must apply for the appropriate permit to do so. The court remanded the matter to the ZBA to hear evidence and make findings on the extent to which the former Camp Najerog made use of the property in the 1967 season.

On remand the Wilmington ZBA held two different hearings. One hearing addressed the scope of Camp Najerog's pre-existing uses, and the other addressed to what extent Gore's proposal required a conditional use permit for the proposed uses which extend beyond those in existence in 1968. The ZBA ultimately granted a conditional use permit for a year-round adult, family, and children's camp.

Appellant again appealed to the environmental court and filed a motion for judgment as a matter of law arguing that the ZBA's grant of a conditional use permit was erroneous because it was grounded upon a misconstruction of the ordinance's discontinuance provision. He argued that had the court and the ZBA properly construed the discontinuance provision it would have examined the whole of Gore's application under conditional use criteria — not just those parts of the application which extend beyond those uses in existence in 1968. Appellant's argument is based on the premise that use of the land as a children's summer camp was a nonconforming use upon adoption of the zoning ordinance. Given that the second provision of § 3(a) prohibits resurrecting a nonconforming use once that use has changed, appellant contends that it is, in effect, a discontinuance provision which applies in this case to prevent Gore from reopening a children's camp absent some other authorization. Appellant reaches this conclusion based on a reading of the ordinance as a whole, in accordance with basic rules of statutory construction, and in conformity with Vermont policy of phasing out nonconforming uses.

We agree with appellant's reading of the ordinance and find that the environmental court's failure to recognize the § 3(a) discontinuance provision was clearly erroneous. See *In re Vt. Nat'l Bank*, 157 Vt. 306, 312, 597 A.2d 317, 320 (1991) (standard of review in cases involving the interpretation of zoning ordinances is whether the trial court's decision was "clearly erroneous, arbitrary, or capricious"); see, e.g., *In re Gregoire*, 170 Vt. 556, 559, 742 A.2d 1232, 1235 (1999) (mem.) (reversing environmental court's erroneous "failure to construe the term 'nonconforming use' to give effect to the whole ordinance").

"We interpret a zoning ordinance under familiar rules of statutory and ordinance construction." *In re Gregoire*, 170 Vt. at 559, 742 A.2d at 1235. The Court construes words to give effect to the whole, and every part, of the ordinance. See *In re Stowe Club Highlands*, 164 Vt. 272, 279, 668 A.2d 1271, 1276 (1995). We adopt a construction that implements the ordinance's legislative purpose, *In re Gregoire*, 170 Vt. at 559, 742 A.2d at 1235, and, "in any event, will apply common sense." *In re Duncan*, 155 Vt. 402, 408,

584 A.2d 1140, 1144 (1990). A plain and common sense reading of § 3 forces the conclusion that the section includes a discontinuance provision which applies to appellee's proposal to resurrect a use that preceded the adoption of the ordinance to the extent it does not comply with current zoning.

Nonconforming uses are widely recognized as uses that lawfully existed prior to enactment of a zoning ordinance, and are maintained after the effective date of such ordinance, even though the use does not comply with the use restrictions applicable to the area. 7 P. Rohan, Zoning and Land Use Controls § 41.01 (1996). Vermont statutes conform to this widely accepted definition and define nonconforming uses as "a use of land or a structure which does not comply with all zoning regulations where such use conformed to all applicable laws, ordinances and regulations prior to the enactment of such regulations." 24 V.S.A. § 4408(a)(1).

We have previously examined nonconforming uses arising under 24 V.S.A. § 4408(a)(1). In *Town of Brighton v. Griffin*, 148 Vt. 264, 532 A.2d 1292 (1987), the town passed an ordinance which prohibited gas stations unless they obtained conditional use permits. Defendants argued that the gas station at issue — which was in use when the zoning ordinance passed, and was then discontinued for a period of two years — was a permitted, not a nonconforming, use within the town's commercial district, and was therefore not subject to the zoning ordinance's six-month discontinuance provision which applied to nonconforming uses. While not explicitly raising the issue of whether conditional uses are a form of permitted uses or nonconforming uses, we proceeded on the premise that, after the town passed an ordinance allowing for gas stations only if they obtained conditional use permits, the gas station in question was operating as a nonconforming use prior to its discontinuance. *Id.* at 266, 532 A.2d at 1293. We found that

because the gas station at issue "neither had a conditional use permit nor complied in all respects with the zoning ordinance, defendants' auto service station was a nonconforming use within the meaning of the ordinance." *Id.* at 269, 532 A.2d at 1294.

The public interest in the regulation and gradual elimination of nonconforming uses is strong. *In re Gregoire*, 170 Vt. at 559, 742 A.2d at 1236. One goal of zoning is to gradually eliminate nonconforming uses. *In re McCormick Mgmt. Co.*, 149 Vt. 585, 590, 547 A.2d 1319, 1322 (1988). Section 1 of the Wilmington town ordinance incorporates this policy by explicit reference to 24 V.S.A. § 4408(b)(3), which states that municipalities may regulate and prohibit resumptions of nonconforming uses if such uses are abandoned or discontinued for any period of time. Zoning provisions allowing nonconforming uses should be strictly construed. *In re Gregoire*, 170 Vt. at 559, 742 A.2d at 1236.

Appellee urges a construction of § 3 of the ordinance so that uses existing in 1968 may be resurrected without review or a permit, notwithstanding any discontinuation of their existence. Based on the fact that children's camps are listed as a conditional use under § 7, appellee argues that conditional uses are a form of permitted uses, legislatively approved as consistent with the zoning plan, and are not, therefore, nonconforming uses under the ordinance. Appellee also relies on the slight variation between the definition of nonconforming use found in § 13 of the Wilmington town zoning ordinance and that found in § 4408. The definition contained in the ordinance makes no reference to former compliance with applicable laws, ordinances and regulations, prior to adoption of the zoning ordinance. Appellee's argument fails to acknowledge § 1 of the ordinance which specifically provides that the ordinance is to be interpreted, administered, and enforced in conformity with the provisions of state

law, with special reference to § 4408. It also ignores the ordinance's § 7, Conditional Uses, which requires conditional use approval when there is a change from one nonconforming use to another nonconforming use. Finally, appellee's argument also ignores the purpose of the discontinuance clause, as well as Vermont's policy of phasing out nonconforming uses. Were we to adopt appellee's, and the environmental court's, construction of the ordinance, a conditional use such as a garbage dump, previously shut down for three decades, could be revived and continued in perpetuity had it merely existed in 1968 when the zoning ordinance was adopted.

We will assume that any ambiguity in the zoning ordinance is the product of inartful drafting and will not read the ordinance's language with such exactitude so as to ignore Vermont public policy of phasing out and eliminating nonconforming uses. Reading the ordinance as a whole, and in conformity with Vermont public policy, we must give effect to § 3's discontinuance provision regarding nonconforming uses and find that, because the provision refers to those buildings, structures and uses pre-existing 1968, it applies to Gore's proposal for a children's camp. To proceed with his project, Gore must obtain a conditional use permit under § 7 criteria for the entire project — without consideration of any former use that was discontinued over twenty years ago. We, therefore, reverse the environmental court's finding that the ordinance contains no discontinuance provision, and remand to the ZBA for complete review of Gore's project as a conditional use, without regard to the pre-existing use of the land as a children's summer camp.

*Reversed and remanded.*