2014 VT 14



In re Group Five Investments CU
Permit (2013-009)

 

2014 VT 14

 

[Filed 14-Feb-2014]

 

NOTICE:  This opinion is subject
to motions for reargument under V.R.A.P. 40 as well as formal revision before
publication in the Vermont Reports.  Readers are requested to notify the
Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont
Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors
in order that corrections may be made before this opinion goes to press.

 

 


 2014 VT 14
 
  


 No. 2013-009
 
  


 In re Group Five Investments CU
 Permit
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 Superior Court,
 
 
  
 
 
 Environmental Division
 
 
  
 
 
  
 
 
  
 
 
 November Term, 2013
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Thomas
 S. Durkin, J.
 
 
  
 
 James A. Dumont, Bristol, for Appellants.

 

David H. Greenberg, Burlington for Appellee.

 

 

PRESENT:   Reiber, C.J., Dooley and Skoglund, JJ., and
Kupersmith and Zonay, Supr. JJ.,

                     Specially Assigned

 

 

¶ 1.            
REIBER, C.J.   This appeal stems from the Superior Court,
Environmental Division’s affirmance of the zoning board’s grant of a
conditional use zoning permit to applicant Group Five Investments, LLC, to build
and operate a Dollar General store in Ferrisburgh, Vermont.  Opponents claim
that the trial court erroneously shifted the burden of proof by requiring
opponents to show both that the proposed project will have an adverse impact on
the area and that existing commercial development in the area has already had
an adverse impact.  Opponents further contend that the trial court erred in
using the Quechee definition of undue adverse impact as guidance in
interpreting the zoning ordinance.  Finally, opponents argue that the trial
court erred in failing to rule that the proposed use is prohibited under the
applicable zoning ordinance, and that the trial court violated Vermont Rule of
Civil Procedure 52(a) by failing to make requested findings on the proposed use
of the Dollar General store.  We affirm the trial court.

¶
2.            
Applicant filed for a conditional use permit in September 2005 to build
a Dollar General store on the southeast corner of the intersection of Route 7
and Monkton Road in Ferrisburgh.  Applicant describes its retail business as a
“general merchandise store that carries everything from food and clothing to
pet supplies to cleaning supplies, some electronics, pretty much everything.” 
The Town of Ferrisburgh Zoning Board of Adjustment granted the permit on February
9, 2011, but imposed seventeen additional conditions on applicant.  Opponents,
local citizens, appealed to the Environmental Division.  

¶
3.            
After a merits hearing, the trial court issued an order affirming the
zoning board’s grant of the conditional use permit.  In its decision, the court
made detailed findings of fact regarding “the project and its site,” and
the “surrounding neighborhood.”  Based on these findings, the court concluded that
applicant’s proposed project complied with all of the performance standards in
the Ferrisburgh zoning ordinance, and that the project complied with all of the
general and specific conditional use standards of the ordinance as well as the
enabling statute promulgated by the Legislature.  However, the court imposed
the additional requirement that applicant install and maintain a crosswalk
across its parking lot to provide a safe walkway for visitors.  The court
declined opponents’ suggested changes to the proposal, including increased
landscaping and relocation of the parking lot and entrance to the back of the
building, on the grounds that such changes would provide little benefit and
present several disadvantages, such as potential safety issues.  Opponents
timely appealed the court’s ruling.

¶ 4.            
The Supreme Court reviews the environmental court’s rulings on
questions of law or statutory interpretation de novo.  In re Vill. Assocs.
Act 250 Permit, 2010 VT 42A, ¶ 7, 188 Vt. 113, 998 A.2d 72.  We uphold
the environmental court’s interpretation of a zoning regulation so long as it
is rationally derived from a correct interpretation of the law and not clearly
erroneous, arbitrary or capricious.  In re Korbet, 2005 VT 7, ¶ 11,
178 Vt. 459, 868 A.2d 720; In re Casella Waste Mgmt., Inc., 2003 VT 49,
¶ 6, 175 Vt. 335, 830 A.2d 60.  As to findings of fact, “the Environmental Court determines the credibility of
witnesses and weighs the persuasive effect of evidence, and we will not
overturn its factual findings unless, taking them in the light most favorable
to the prevailing party, they are clearly erroneous.”  Vill. Assocs.,
2010 VT 42A, ¶ 7 (quotation omitted).

I.

¶
5.            
We begin with opponents’ argument that the trial court improperly
shifted the burden of proof from applicant by requiring opponents to
demonstrate that the proposed project would have an adverse impact.  Opponents’
argument is without merit.  The trial court made detailed factual findings
based on the evidence offered by both sides at trial, and concluded based on
those findings that applicant had demonstrated that its proposed project met
the conditional use criteria¾including
the requirement that the proposed development not have an adverse impact on the
area.     

¶
6.            
To the extent that the court made statements in its decision such as
“[w]ithout a credible factual foundation, we cannot make the legal
determination that the proposed project will be adverse to provisions of the
[ordinance],” the court was merely reiterating that opponents had not
successfully rebutted applicant’s showing that it had met the conditional use criteria. 
In In re Miller Subdivision Final Plan, an opponent to a development
project similarly argued that the environmental court improperly shifted the
burden of proof by stating that “there has not been evidence presented in this
proceeding” to show that the adverse impact alleged by opponent would occur. 
2008 VT 74, ¶ 17, 184 Vt. 188, 955 A.2d 1200.  We rejected the opponent’s
argument in that case, noting that “[t]he record, when read as a whole, clearly
indicates that the court properly placed the burden on applicant.”  Id.
¶ 18.  Similarly, the court here considered the evidence as a whole and
ruled applicant had met its burden of proof, both in its denial of opponents’
motion for a directed verdict and its final order.   

¶
7.            
Relatedly, opponents argue that the court improperly required them to
demonstrate that the existing commercial use has already had an adverse
impact.  Opponents base their claim on the following statement in the court’s
judgment order:

Interestingly,
if the existing commercial developments had detrimental impacts upon this area,
we would have expected evidence of such impacts to be presented.  Instead,
[opponents] presented no evidence to show that the existing commercial
developments in the vicinity of this project site have had an unduly adverse
impact on the character of this area.  Without such evidence, we are hard
pressed to conclude that the addition of [a]pplicant’s proposed project will
have an incremental adverse impact.

 

Opponents
take this language to mean that “[b]y the trial court’s logic, any zoning
purpose statement or [t]own [p]lan statement that calls for a future character
of the area that differs from present uses cannot be considered during
conditional use review¾absent proof
that preexisting uses are actually causing harm.”  We do not interpret
the court’s reasoning so rigidly.  The court was not establishing a
hard-and-fast rule that opponents of development projects must show ongoing
harm from current uses to prove future incremental harm.  Rather, the court reasoned
that if future commercial development is likely to cause harm in an area with
already existing commercial development, then one might expect to see harm from
the existing development.  The absence of evidence of harm from existing
commercial development was a factor the court took into account and found
compelling.  

¶
8.            
Opponents argue that the court’s reasoning does not comply with our
holding in In re John Russell Corp., where we reversed the environmental
court’s grant of a conditional use permit because the court failed to assess
the differential impact a proposed asphalt plant would have on a predominantly
“rural and agricultural” area with no previous industrial development.  2003 VT
93, ¶¶ 31-33, 176 Vt. 520, 838 A.2d 906 (mem.).  The facts of that case
are distinguishable.  The industrial development was at odds with the existing
uses in the area.  Further, we held that the environmental court did not
sufficiently analyze the project’s cumulative impact, such as evaluating
complaints about noise from neighbors and assessing the increase in truck
traffic.  Id.  

¶
9.            
Here, by contrast, the proposed commercial development is to an area
that already has commercial uses.  Further, the court made specific findings
regarding the project’s impact on traffic and noise that supported its
conclusion that there would be no increased impact.  The court noted that the
proposed project will host a single business, not a strip mall or other
conspicuous entity, and that it is already surrounded by commercial developments,
including several large barn structures.  Further, unlike John Russell Corp.,
where the court did not make adequate findings as to the impact of noise and
additional traffic, here the court considered evidence as to both of these
factors and concluded that there was no adverse impact.  This analysis did not
improperly shift the burden onto opponents or fail to address their claims
regarding an incremental shift in the character of the area, but rather
evaluated opponents’ arguments and found them unconvincing.  See In re
Miller, 170 Vt. 64, 70, 742 A.2d 1219, 1224 (1999) (holding that the
court’s findings were not clearly erroneous when supported by applicant’s
evidence, albeit disputed by the project’s opponents).  Therefore, we conclude
that the trial court did not improperly shift the burden of proof onto
opponents.

II.

¶
10.        
Next, we address opponents’ argument that the environmental court
erroneously applied the legal standard from the Quechee test in Act 250
Criterion 8 to the conditional use review here to determine the adverse effect
on the “character of the area.”  See 24 V.S.A. § 4414(3)(A).  Our review
of the environmental court’s determination of whether a proposed project will
have a material adverse impact is deferential, meaning that we will uphold the
court’s determination unless it is clearly erroneous.  John Russell Corp.,
2003 VT 93, ¶ 30.  

¶
11.        
The Vermont Legislature has authorized municipalities to condition land
development on specific and general standards, so long as the municipal
standards conform to the standards in the enabling legislation.  24 V.S.A.
§ 4407(2) (repealed 2004).[1] 
In Section 9.4 of its zoning ordinance, the Town of Ferrisburgh set general and
specific standards governing conditional uses.  The “General Standards,”
§ 9.4(A), require the Zoning Board to determine that “the proposed use
will not adversely affect . . . [t]he character of the area
affected.”  The court determined that Bylaws Section 9.4 conformed to the enabling
legislation, and consequently found the Bylaws provisions controlling on the
issue of the conditional use standards.  In interpreting the “adverse[]
[e]ffect” language of Section 9.4(A), the court took guidance from the Quechee
definition of “undue adverse impact” commonly used in the context of reviewing
a state land use permit application under Criterion 8 of Act 250.[2] 
See In re Times & Seasons, LLC, 2008 VT 7, ¶ 8, 183 Vt. 336,
950 A.2d 1189; In re McShinsky, 153 Vt. 586, 591, 572 A.2d 916, 919-20
(1990).  

¶
12.        
The court reasoned that although the “undue adverse effect” contains an
extra term¾“undue”¾this standard is “interchangeable in
application” to the determination of whether a development will have an adverse
effect.  First, the court noted that the Quechee standard constituted a
“common-sense definition of ‘undue adverse effect.’ ”  Second, the court
recognized that the Quechee definition of “undue adverse effect” was
“common knowledge” to the Legislature when it adopted that term in its revision
of the conditional use enabling statute.  Thus, the court concluded that the Legislature
“intended analysis of applications for municipal conditional use approval to be
guided by the two-pronged test employed in Quechee.”  Finally, the court
noted that this Court has held “that the adverse effect test [referenced in
zoning municipal ordinances] must be applied reasonably to prohibit only
substantial and material adverse effects.”  In re Miller, 170 Vt. at 69,
742 A.2d at 1223.  The court concluded that there was little difference between
“undue” and “substantial and material” adverse effects, and interpreted the
“adverse effects” provision of the town zoning ordinance consistently with the Quechee
definition.   

¶
13.        
Opponents contend that the court’s use of the Quechee standard
was clearly erroneous.  They argue that Criterion 8 of Act 250 is
distinguishable from Section 9.4(A) of the town zoning ordinance because Act
250 does not include preservation of the “character of the area” as an explicit
statutory criterion; because Criterion 8 only protects areas of scenic and
natural beauty, and communities may possess valuable attributes beyond scenic
beauty; and because the purpose of Act 250 is only to address large-scale
changes in land use, not incremental impacts of smaller changes.  See Comm.
to Save Bishop’s House v. Med. Ctr. Hosp. of Vt., 137 Vt. 142, 151-52, 400
A.2d 1015, 1020 (1979). 

¶
14.        
We conclude that the court did not err in using the definition of undue
adverse impact from the Quechee test as guidance for interpreting the
adverse effect language of Bylaws § 9.4(A).  The court did not apply the Quechee
test in its entirety, but was merely guided by the definition of undue adverse
impact from the Quechee analysis in order to inform its interpretation
of the adverse effect language in the Bylaws.  Rather than examining the undue
adverse impact on those elements contained in Act 250, the court properly
examined the adverse effect on the specific items listed in the Bylaws,
including: “1) The capacity of existing or planned community facilities. 2) The
character of [the] area affected. 3) Traffic on the roads and highways in the
vicinity. 4) The [t]own [p]lan and bylaws in effect. 5) Utilization of
renewable energy resources. 6) The appropriate use or development of adjacent
property.”  The court found, based on the evidence, that the proposed
development posed no adverse impact as to any of these areas.  Therefore, opponents’
arguments that the court’s analysis was faulty because Act 250 does not does
not call for an analysis of the character of the area and applies only to
large-scale projects is without merit.  Even if opponents were correct in their
interpretation of Act 250, their argument bears no relevance because the court
merely used the definition of undue adverse impact from the Quechee
test, not the elements to which the definition applied.         

¶
15.        
Further, we agree with the environmental court’s application of our
analysis in Miller to this case.  In that case, we held that for the
purposes of interpreting a zoning ordinance in accordance with the enabling statute,
the “adverse effect test must be applied reasonably to prohibit only
substantial and material adverse effects.”  Id. at 69, 742 A.2d at 1223.  The case that we cited for that
proposition, In re Walker, 156 Vt. 639, 639, 588 A.2d 1058, 1059 (1991)
(mem.), elaborates on our reasoning underlying the substantial and material
adverse effects test.  In Walker, we rejected a project opponent’s
literal reading of the ordinance and its consequent argument that “if any adverse effect is
found, the permit must be denied.”  Id.  We reasoned that “[a]ny
conditional use will have some adverse effect . . . . If
appellant’s approach were adopted, it would require the denial of all
conditional use permits, an irrational result contrary to legislative intent.” 
Id.  Accordingly, we upheld the trial court’s application of the “material-adverse-effect standard,” stating that this
standard “facilitates a rational result consistent with legislative intent and
sound statutory interpretation.”  Id.  Although we interpreted the
enabling statute in that case, the same reasoning applies to the conditional
use ordinance at issue here.    

¶
16.        
Opponents further argue that the court overlooked the Town’s intentions
for development, as expressed in the town plan and the Bylaws.  In particular, opponents
point to Chapter 4 of the town plan, which provides that “[p]rotecting the
Route 7 corridor is critical to maintaining the rural character and quality of
life Ferrisburgh residents currently enjoy. . . . Preventing the highway
corridor from becoming a fully developed commercial strip should be a principal
purpose of the town’s regulations.” 
To this end, the plan states that “[t]he
size, scope and impact of commercial uses along the state highway should be
subject to site plan review to protect neighboring residences, the visual
character and transportation function of the highway and to further the goals
in the town plan for economic development.”  Opponents’ expert testified that
the proposed project contradicts these provisions of the plan.  However,
rather than providing specific standards, these provisions contain general
statements.  “Broad policy statements phrased as nonregulatory
abstractions . . . may not be given the legal force of
zoning laws.”  In re John Russell Corp., 2003 VT 93, ¶ 16
(quotations omitted).  These general statements in the plan are insufficient to
create a legally binding standard.  

¶
17.        
Opponents also
rely on the Bylaws for the Highway Commercial District, where the proposed
development will be located, which state: “It is the primary policy of this
district to provide an area to serve highway oriented businesses and highway
uses.  The size of the commercial uses should be restricted to protect the
residential character and traffic access in this and adjoining districts.”  Contrary
to opponents’ assertion that the proposed development contradicts this section
of the Bylaws, the court correctly noted that “[t]he
[t]own [p]lan specifically identifies the area of the proposed project as
having a high concentration of commercial development,” and encourages this
development “so that there will be less development pressure in ‘low-density
residential or open space/agricultural land.’ ”  Moreover, the court
examined the evidence that the new store would cause an incremental adverse
impact, but disagreed with opponents’ arguments.

¶
18.        
For these reasons, the environmental court did not err in its evaluation
of whether this development project would have an adverse effect on the
elements enumerated in the Bylaws. 

III.

¶
19.        
Finally, we address opponents’ argument that the trial court erred in
failing to rule that the proposed Dollar General store is a prohibited use in
this district, and that the trial court violated Vermont Rule of Civil
Procedure 52(a) by failing to make requested findings on the nature of the
proposed Dollar General use.  

¶
20.        
As to the findings argument, opponents contend that the court failed to
make specific findings regarding the type of store the proposed project was.  The
court characterized the Dollar General as a “discount retailer,” and stated
that “Dollar General’s stated company slogan is ‘today’s general stores.’ 
Evidence presented at trial did not include any presentation that the general
public shares this self-assessment.”  Although the court’s findings as to the
proposed use were not particularly detailed, they are adequate for purposes of
applying the ordinance and for purposes of Civil Rule 52.  Moreover, these
findings were supported by applicant’s trial testimony that the store would be
“a general merchandise store that carries everything from food and clothing to
pet supplies to cleaning supplies, some electronics, pretty much everything.  It’s . . . a
lot of different products.”  This was sufficient to show that the court
considered the store a retail store.   

¶
21.        
Next, opponents contend that the environmental court should have treated
applicant’s proposed project as “convenience, retail” rather than “retail sales,”
as those terms are defined in Section 2.2 of the zoning bylaws.  The Bylaws
define these terms as follows:

  CONVENIENCE,
RETAIL: Shall mean an establishment whose principal use is the sale of products
in small quantities for the daily use of customers including, but not limited
to, bakeries, food stores, news stands, tobacco shops, card shops, liquor
stores, delicatessens, musical supply stores, pet stores, jewelry stores,
camera and photography supplies, ice cream parlors, meat and seafood shops and
florist shops. 

 

  . .
. 

 

  RETAIL
SALES: Shall mean an establishment whose principal use is the sale of products
for consumption or use by the customer off the premises.  This shall include
but not be limited to hardware, paint, office equipment, sporting goods,
trading stamp and redemption outlets, television, satellite dishes, automotive
supply and major household appliance stores.  

 

¶
22.        
Section 4.4(B), governing the Highway Commercial District where the
proposed project would be located, provides twenty-four conditional uses, including
“retail store” but not “convenience, retail.”  Opponents argue that because the
proposed store is a “convenience, retail” store, it is prohibited in this
district.  

¶
23.        
We construe the ordinance according to the general rules of
statutory interpretation.  In re Laberge Moto-Cross Track, 2011 VT 1,
¶ 8, 189 Vt. 578, 15 A.3d 590 (mem.).  We interpret an ordinance’s “words
according to their plain and ordinary meaning, giving effect to the whole and
every part of the ordinance.”  In re Champlain Coll. Maple St. Dormitory, 2009
VT 55, ¶ 13, 186 Vt. 313, 980 A.2d 273 (citation and quotations omitted).  “We
adopt a construction that implements the ordinance’s legislative purpose and,
in any event, will apply common sense.”  In re Lashins, 174 Vt. 467,
469, 807 A.2d 420, 423 (2002) (mem.) (citation and quotation omitted).

¶
24.        
Here, a common-sense interpretation of the ordinance includes a retailer
such as the Dollar General store among the conditional uses intended by the
ordinance.  First, the store’s proposed use as a discount retailer fits
comfortably into the retail sales definition provided in the ordinance, as the
goods sold in a “general store” or “discount retailer” are generally “for
consumption or use by the customer off the premises.”  Second, the retail sales
definition includes the language, “this shall include but not be limited to,”
meaning that the definition was intended to be inclusive rather than
restrictive.  Finally, Section 4.4(B)(24) of the Bylaws is similarly inclusive,
in that it includes a catch-all provision for “[o]ther similar uses which meet  the
intent of purpose statement upon finding . . . that such
use is of the same general character as those permitted and which will not be
detrimental to the other uses within the District or to the adjoining land
uses.”  The proposed store fits the retail sales definition, but even if it did
not, it is sufficiently similar to the retail sales definition to fit into the
catch-all provision in Section 4.4(B)(24). 

            Affirmed.


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Chief Justice
 
  





[1] 
In its original opinion, the court noted that
“[t]here is one slight but notable difference between the enabling statute and
the Bylaws,” because the statute states that “the proposed conditional use
shall not result in an undue adverse effect on any of” the municipality’s
adopted general standards, see 24 V.S.A. § 4414(3), whereas Bylaws Section 9.4
requires a determination “that the proposed use will not adversely affect” the
general standards.  Later, in an amended opinion, the court acknowledged
that it had mistakenly applied the newer statute, § 4414(3), to this case
when the older statute, § 4407, was actually controlling. Although enacted
in 2004, Section 4481 gave the Town until September 1, 2011 to update its
ordinance to comply with the mandates of Section 4414(3).  Because the
application here was filed in September 2010 and the Town had not updated its
ordinances, Section 4407 continued to govern the application.  However,
this correction did not ultimately affect the court’s reliance on the Quechee
standard or its adverse impact definition.

 





[2] 
We have described the Quechee test as follows: 

 

First, [the Board] determines if the proposed project will
have an adverse aesthetic impact, and if so, it considers whether the adverse
impact would be undue.  An adverse impact is considered undue if any one
of the three following questions is answered in the affirmative: (1) does the
project violate a clear, written community standard intended to preserve the
aesthetics or scenic, natural beauty of the area; (2) does the project offend
the sensibilities of the average person; and (3) has the applicant failed to
take generally available mitigating steps that a reasonable person would take
to improve the harmony of the proposed project with its surroundings. 

 

Times &
Seasons, LLC, 2008 VT 7, ¶ 8.  This Court has approved the use of the Quechee
test in Act 250 cases.  Id.