STATE OF VERMONT

Docket No. 150-11-17 Vtec

---

Burris Zoning Permit Denial

---

## ENTRY REGARDING MOTION

Count 1, Municipal DRB Appeal

| | |
|---|---|
| Title: | Motion to Alter or Amend the Judgment (Motion 2) |
| Filer: | Town of Shelburne |
| Attorney: | Edward G. Adrian |
| Filed Date: | August 3, 2018 |

Response filed on 08/17/2018 by Nathanael T. Burris, Appellant
        Opposition

**The motion is DENIED.**

In this on-the-record proceeding, Appellant Nathanael Burris seeks a permit to build a fence in the backyard of his property in Shelburne, Vermont. The Town of Shelburne Development Review Board (DRB) denied his request. On July 9, 2018, this Court issued a Merits Decision and Judgment Order remanding the matter back to the Town of Shelburne (Town) for further development of the facts. The Town asks the Court to alter and amend our merits decision to withdraw the remand and affirm its denial of Mr. Burris' fence.

The Town originally denied the proposed fence because it cuts through a periphery buffer zone, as defined by the Shelburne Zoning Bylaws (Bylaws). In our merits decision, this Court agreed with the Town that the plain meaning of § 1930.3.A.3 of the Bylaws prohibits the construction of structures, including fences, in the buffer zone without exception. We also concluded that a remand was necessary to address the deficient factual record, which did not indicate whether the DRB had previously allowed structures in the buffer zone under a different interpretation of the Bylaws.

V.R.C.P. 59(e) gives the Court broad power to alter or amend a judgment "if necessary to relieve a party against the unjust operation of the record resulting from the mistake or inadvertence of the court and not the fault or neglect of a party." Rubin v. Sterling Enter., Inc., 164 Vt. 582, 588 (1996); Reporter's Notes, V.R.C.P. 59(e). There are four primary reasons to grant a Rule 59(e) motion: (1) to "correct manifest errors of law or fact upon which the judgment is based"; (2) to allow a moving party to "present newly discovered or previously unavailable evidence"; (3) to "prevent manifest injustice"; and (4) to respond to an "intervening change in the controlling law." In re Lathrop Ltd. P'ship I, Nos. 122-7-04 Vtec, 210-9-08 Vtec, and 136-8-10 Vtec, slip op. at 10–11 (Vt. Super. Ct. Envtl. Div. Apr. 12, 2011) (Durkin, J.) (quoting 11 Wright,

Miller & Kane, Federal Practice and Procedure: Civil 2d § 2810.1), *aff'd in part, rev'd in part on other grounds*, 2015 VT 49, ¶ 21, 199 Vt. 19.

The Court interprets the Town's motion to assert that our prior decision was based on an error of law. The Town contends that because we understood the plain meaning of the Bylaws to prohibit all structures in the buffer zone, our inquiry must end there. In the Town's view, its prior interpretations of the Bylaws, whatever they may have been, warrant no deference or consideration. Because the basis for our remand requires further explanation, we take this opportunity to clarify the role of a town's interpretation in this Court's evaluation of its bylaws. While our July 9, 2018 decision does require elaboration, we do not disturb the legal conclusions or final determinations therein.

This Court employs a number of tools to aid our interpretation of zoning ordinances—the "familiar rules of statutory and ordinance construction." In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. We read the "plain and ordinary meaning" into the terms used, and give consideration "to the whole and every part of the ordinance." In re Stowe Club Highlands, 164 Vt. 272, 279 (1995). Between two otherwise equal interpretations, we will adopt the one that avoids mooting language or creating surplusage in the ordinance. In re Miller, 2009 VT 36, ¶ 14, 185 Vt. 550. The usefulness of any given rule depends on the context of the case, the questions before the Court, and the available evidence.

We can also use a town's interpretation of its own bylaws to guide us to their accurate and intended meaning. See, e.g., Brisson Stone, LLC v. Town of Monkton, 2016 VT 15, ¶ 11, 201 Vt. 286. The amount of weight we give to a town's interpretation depends on the strength of the "'reason or rationale for its decision' as well as a demonstration that the interpretation has been consistent." In re Korbet, 2005 VT 7, ¶ 10, 178 Vt. 459 (quoting In re Appeal of Chatelain, 164 Vt. 597, 598 (1995)); see also Lathrop Ltd. P'ship I, 2015 VT 49, ¶ 21.

The Town's motion requires us to clarify the relationship between two of these tools of ordinance construction: the plain meaning we impart to the words used and the consideration we give to a town's interpretation. The Town effectively asks us to create a strict hierarchy between these tools through a two-part test. This Court would first evaluate the plain meaning of the ordinance, in isolation. Only if that evaluation failed to produce a conclusive interpretation could this Court then turn to evidence of how a town has interpreted and applied the ordinance. This two-stage inquiry does not find support in precedent, nor does it fit the purposes of the interpretive tools.

Arguing that consideration of a town's interpretation is a last resort, the Town relies on language that originated with In re Maple Tree Place. There, the Vermont Supreme Court stated that "the interpretation of a zoning ordinance by municipal zoning staff and the zoning board can be *determinative in a close case* as 'the interpretation of [an ordinance] by the administrative body responsible for its execution.'" 156 Vt. 494, 499-500 (1991) (emphasis added) (quoting In re Duncan, 155 Vt. 402, 408 (1990)); see also In re Champlain Coll. Maple St. Dormitory, 2009 VT 55, ¶ 10, 186 Vt. 313, *overruled on other grounds by* In re Confluence Behavioral Health, LLC, 2017 VT 112. While a town's interpretation can determine close cases, this Court can use town interpretations for more than just breaking ties. It will depend on context, but there are many instances where this Court's interpretation might be aided by considering a town's historical understanding of an ordinance, even if the Court does not ultimately find the town's view determinative or persuasive.

Our primary purpose in interpreting ordinances is to give effect to the intent of the drafters. In re Bjerke Zoning Permit Denial, 2014 VT 13, ¶ 22 (quoting Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49 (1986))). Rules of interpretation are a means to that end. See Board of Trustees of Kellogg-Hubbard Library, Inc. v. Labor Relations Bd., 162 Vt. 571, 575 (1994) ("Although rules of statutory construction may be helpful in interpreting the meaning of statutes, they are secondary to our primary objective of giving effect to the intent of the legislature."); Clymer v. Webster, 156 Vt. 614, 625 (1991) (declining to apply canons of statutory construction strictly when they did not accurately identify the statute's purpose). This requires us to "adopt a construction that implements the ordinance's legislative purpose and, in any event, will apply common sense." In re Lashins, 174 Vt. 467, 469 (2002) (mem.) (citation and internal quotation marks omitted).

Instead of the formulaic approach urged by the Town, we reiterate the flexible and discretionary nature of the tools of interpretation. See, e.g., State v. Baldwin, 140 Vt. 501, 511 (1981) ("Rules of construction are not laws, hard and inflexible, which *must* be applied in a given situation simply because it is possible to do so."). The ultimate goal is to give effect to the ordinance's legislative purpose. This Court will frequently need to disregard a town's interpretation to discharge its responsibilities under de novo review. At other times, a town's interpretation will be dispositive. Conversely, the plain meaning of the ordinance will often control. In re Carrigan Conditional Use and Certificate of Compliance, 2014 VT 125, ¶ 21, 198 Vt. 438. But this Court may disregard even the plain meaning where the legislative intent clearly lies elsewhere. See State v. Ben-Mont Corp., 163 Vt. 53, 59 (1994) ("We will not confine ourselves to the literal meaning of a statute when it contradicts the legislative intent."); 38 Thasha Lane Dev. Water & Sewer Fees Denial, No. 136-9-14, slip op. at 6 (Vt. Super. Ct. Envtl. Div. Aug. 28, 2015) (Walsh, J.).

The rules of construction are not applied independently of one another, as the Town suggests. In deciding whether or not to defer to a DRB's interpretation of an ordinance, the Supreme Court has used plain meaning to determine the reasonableness of that interpretation. See Carrigan Conditional Use, 2014 VT 125, ¶ 21 (citation omitted); see also In re Quality Mkt., No. 53-3-08 Vtec, slip op. at 3 n.5 (Vt. Envtl. Ct. Aug. 31, 2009) (Wright, J.). Because these tools are interrelated in their purpose and use, they cannot be reduced to a formula. In the present matter, a pattern of inconsistent interpretation of the Bylaws by the Town may lead us to reassess the plain and ordinary meaning of the terms used, just as finding a different dictionary definition would require us to rethink our understanding of a particular word.

This is not to suggest that this Court should defer to town interpretations readily, or place excessive emphasis on them. De novo review requires us to evaluate the meaning of the ordinance independently. In re Poole, 136 Vt. 242, 245 (1978) (de novo review means "the case is heard as though no action whatever had been held prior thereto."). Nor could a town's incorrect interpretation over time defeat the requirements this Court may read out of an ordinance. See, e.g., In re SP Land Co., No. 74-5-10 Vtec, slip op. at 18 (Vt. Super. Ct. Envtl. Div. Jan. 27, 2011) (Durkin, J.) (holding that an "ultra vires act, repeated over time" by a town misinterpreting its ordinance does not become a lawful practice); see also In re Musto Constr. Permit, No. 132-7-09 Vtec, slip op. at 13 (Vt. Super. Ct. Envtl. Div. Jan. 27, 2011) (Wright, J.) ("The Court is not obligated to perpetuate an error." (citation omitted)).

The usefulness of any given tool of interpretation is contextual. There are close cases where a town's interpretation can be determinative. There are other close cases where a town's

interpretation is not helpful.  There are still other instances where, close case or not, a town's interpretation can guide the Court to the ordinance's legislative purpose and a better understanding of the case, even where the plain language points to one particular reading.  To determine what role the Town's interpretations should play in this case, the Court requires a sufficient record that shows how the Town has understood and applied its Bylaws. We could not apply the rule of "giving effect to the whole and every part of the ordinance" if the parties only provided us with an isolated sentence or provision.  Similarly, we cannot gauge the usefulness of the Town's interpretations without a record of them.[1]

Especially here, the Town's interpretations over time are important to fully understand the case.  Mr. Burris alleges that the Town has previously allowed structures in the periphery buffer zone.  Evidence supporting this allegation would directly contradict the plain meaning we ascribed to the Bylaws in our July 9, 2018 decision, as well as the interpretation proffered by the Town.  We sustain the remand, not because the Town's prior interpretations are necessarily determinative, but to equip ourselves with all the relevant tools of interpretation.

For the foregoing reasons, we **DENY** the Town's motion to amend and alter our July 9, 2018 decision.


So ordered.

Electronically signed on October 12, 2018 at 11:21 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division




Notifications:
Appellant Nathanael T. Burris
Edward G. Adrian (ERN 4428), Attorney for Interested Person Town of Shelburne

---

[1] Following similar reasoning, we have denied summary judgment so the consistency of a town's interpretation could be developed at trial.  In re Smith 4-Lot Subdivision Final Plat, No. 244-12-09 Vtec, slip op. at 7 (Vt. Envtl. Ct. Apr. 30, 2010) (Wright, J.) ("The Court, however, cannot interpret this phrase without the context of knowing how it has been applied by the DRB in the past or whether it has been consistently applied.").