STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re:  Snelgrove Permit Amendment | } | Docket No. 25-1-07 Vtec |
| (Appeal of LeBlanc, et al.) | } | |
| | } | |

Decision and Order

Appellants David LeBlanc, Christine Fortin, James LeBlanc and Herman LeBlanc (Appellants) appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Newport granting a zoning permit amendment to Appellee-Applicant Robert Snelgrove for an as-built boathouse.   Appellants are represented by Duncan Frey Kilmartin, Esq.; Appellee-Applicant (Applicant) is represented by Christopher D. Roy, Esq; and the Town of Newport is represented by William Boyd Davies, Esq.

This Court's decision and order of July 18, 2008, resolved Questions 2, 3, 4, 6, and 7 of the Statement of Questions.  By that decision and order, Question 3 was dismissed as moot, and Questions 4 and 6 were resolved in favor of Applicant that the issues raised by those questions had not been before the ZBA and therefore were not before the Court in the present proceeding.

Question 7 was resolved in favor of Applicant that the 2005 Permit had become final without appeal and could not be challenged in the present appeal, that is, that Applicant remains entitled to have what was applied for and approved in the 2005 Permit: a 15′ x 35′ single-story boathouse located five feet northerly of the former boathouse.  See, e.g., In re Appeal of Adams, No. 145-9-03 Vtec, slip op. at 3 (Vt. Envtl. Ct. Mar. 21, 2005) (Wright, J.) (citing Town of Bennington v. Hanson-Walbridge Funeral Home, Inc., 139 Vt. 288, 292–93 (1981)).  The construction allowed by the 2005 Permit continues to qualify as a nonconforming structure (as defined in 24 V.S.A. § 4303(14)

and § 602 of the Zoning Bylaws) as having been improperly authorized as a result of error of the Zoning Administrator, because the new construction was proposed to be located within the side setback and should have been referred to the ZBA under § 404(2) of the Zoning Bylaws.

Because, under the unappealed 2005 Permit, all that Applicant was authorized to construct was a replacement 15′ x 35′ single-story boathouse, located five feet farther north than the existing boathouse, Question 2 was resolved in favor of Appellants that the as-built boathouse represents an expansion within the setback area that is far larger than that authorized by the 2005 Permit. The remainder of Question 2 was also resolved in favor of Appellants that the as-built boathouse increases the volume of noncomplying structure occupying the required setback area beyond that of the former boathouse, and therefore does not qualify to apply for conditional use approval as a permissible alteration or expansion of a nonconforming structure under § 404(2) of the Zoning Bylaws. However, material facts as to the specific measurements of the former boathouse remained for trial; that is, the Court was unable to rule on summary judgment as to how much larger the as-built boathouse was, as compared with the former boathouse.

After the decision on summary judgment, Questions 1 and 5 of the Statement of Questions remained for trial, as well as the facts relating to the size of the former boathouse. Applicant also moved for reconsideration or clarification of the summary judgment order; by agreement of the parties that motion was postponed to be considered after the trial, together with any post-trial memoranda.

An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. A site visit was taken on the hearing day with the parties and their representatives. The parties were given the opportunity to submit written memoranda and requests for findings, in addition to their memoranda on the motion for reconsideration or clarification. Upon consideration of the evidence as illustrated by

2

the site visit, and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows. The parties provided the Zoning Bylaws last amended in February of 2006 (the 2006 Bylaws) as the version of the Zoning Bylaws applicable to this appeal.[1]

The 2006 Bylaws define the entire Town of Newport as a single zoning district. § 201. Section 206 establishes dimensional requirements for lots and structures according to each general use category. For dwelling uses, the side yard setback and rear yard setbacks are 25 feet, and the building height maximum is 35 feet. § 206.1. The only structures for which a reduced setback is provided are utility sheds not exceeding 200 square feet in area, for which all yard setbacks are five feet, and for which the maximum height is eight feet. § 206.4. The 2006 Bylaws do not establish any separate lakeshore setback requirement or boathouse exemption.

Applicant's property is located at 5706 Lake Road on the westerly shore of Lake Memphremagog in the Town of Newport. When Applicant acquired the property in 1976, it included an existing single-family house and a then-existing boathouse (the former boathouse[2]) located near the lake shore. A small stream entered the back of the former boathouse, dropping four to five feet in elevation to its outlet at the lake level at the front of the former boathouse.

---

[1] The parties have not provided any earlier zoning ordinance from which the Court could determine when the boathouse became nonconforming; for the purposes of this decision the Court will assume that the regulations in effect in October of 2005, when the first application was filed, also contained the 25-foot side setback requirement. The 2006 Bylaws also do not appear to contain any new waiver provisions as allowed by 24 V.S.A. § 4414(8).

[2] The boathouse was originally built in 1931, and was in place as of Applicant's purchase of the property in 1976; the superstructure above the foundation was renovated in 1992, but not changed in size or shape. All references to the "former" boathouse dimensions in this decision refer to the structure as renovated in 1992.

Under the 2006 Bylaws the house is categorized as a permitted single-family dwelling use and the former boathouse is categorized as a permitted accessory use. § 206, Permitted Uses (1), (8).

Appellants' property is the adjacent lakeshore property to the south. The deeds in evidence suggest that the deeded LeBlanc-Snelgrove property line runs from the lake westwards along what was the south side of the former boathouse, and then northwards along or near the back or west side of the former boathouse, before proceeding from there towards the west. However, any dispute as to the location of the property line or as to the parties' respective property rights, including whether any of the construction related to the boathouse encroaches on Appellants' property, is not before this Court in this appeal; it must be raised, if at all, in Superior Court. See 4 V.S.A. § 1001(b); e.g., In re Leiter Subdivision Permit, No. 85-4-07 Vtec, slip op. at 4 (Vt. Envtl. Ct. July 25, 2008) (Durkin, J.) (citing Appeal of Monty, Nos. 7-1-04 Vtec and 47-3-04 Vtec (Vt. Envtl. Ct. Jan. 24, 2006) (Durkin, J.)).

Because the former boathouse was located at or near the LeBlanc-Snelgrove property line, it was entirely within the twenty-five-foot-wide side yard setback area. Under Article IV of the 2006 Bylaws, the former boathouse was therefore a nonconforming structure that was entitled to continue, provided that the conditions of § 404[3] are met.

The former boathouse had a low concrete foundation or concrete footings, extending approximately two-and-a-half to three feet above the surrounding ground level at the lake end of the building, and extending approximately three feet above the surrounding ground level at the northwest corner of the building adjacent to the opening through which the stream entered the back of the building. A single-story clapboard structure was built on the concrete footings; the structure opened onto the

---

[3] Article IV only contains § 404, which has three subsections; there is no § 401, § 402, or § 403.

lake and provided access and storage for a single boat. The exposed width of each clapboard was 5¼ inches, making it possible to estimate the height of the former structure above its concrete foundations, from photographs in evidence. The structure had a shallow peaked roof with the gable ends facing east and west (towards and away from the lake); the attic area was used for storage. The roof of the former boathouse extended approximately one foot beyond its side walls on all four sides of the building. The concrete footings or foundation blocks sloped outwards at about a twenty degree angle from their top edges down to the ground, so that the foundation at ground level[4] also extended beyond the side walls of the building.

Whether measured where the footings met the ground or at the full extent of the roof, the former boathouse occupied a footprint of approximately 21′ 3″ in width and approximately 32′ 3″ in length, with the walls of the structure having a width of approximately 18′ 3″ and a length of approximately 30′ 3″. The wooden structure of the former boathouse extended above the foundation approximately 11 feet to the peak of the roof, so that the peak of the roof was approximately 14 feet above the surrounding ground level (regardless of the lake level or the level of water within the stream or within the boathouse). Although it may technically be possible to establish an elevation above sea level for the peak of the roof of the former boathouse, by comparing photographs that contain the former boathouse together with other known features that still exist, determining the elevation of the still-existing features, and correcting for the angle at which the photographs were taken, no expert surveyor or other expert

---

[4] Applicant argues that the Court should consider the size of the former boathouse as having extended underground to the bottom of the footings. However, nothing in the Zoning Bylaws or the state statute supports extending the open space required in a yard setback below the ground. Cf. In re Edgar Northshore Dr. Variance Application, No. 292-12-07 Vtec, slip op. at 7 (Vt. Envtl. Ct. Feb 5, 2009) (Wright, J.); In re Fenoff Accessory Dwelling Application, No. 280-12-06 Vtec, slip op. at 6–7 (Vt. Envtl. Ct. Mar. 19, 2008) (Wright, J.).

evidence was presented to provide that elevation evidence in the present case. (Similarly, while it is technically possible for a surveyor to establish an elevation above sea level for the peak of the roof of the as-built boathouse, no such actual measured elevation evidence was presented in evidence.)  In any event, for the reasons discussed below, a finding as to the elevation above sea level of the peak of the former boathouse is not essential to the resolution of the present appeal.

In October of 2005, Applicant submitted an application for a zoning permit, proposing to reconstruct the boathouse northerly of the stream, about five feet northerly of its pre-existing location.  The application stated both the "existing use and occupancy" and the "proposed use and occupancy" as "BOATHOUSE."  The application stated the building length as "35 [feet]," the width as "15 [feet]," and the number of stories as "1."  The application noted that it was for the "DEMOLITION & REBUILDING OF SAME SIZE BOATHOUSE 5 FT NORTH OF EXISTING." Whether the width of the boathouse had been 15 feet as stated in the application, or was actually 18 (or 21) feet in width, moving it five feet to the north meant that it (or all but the northernmost foot) would still be located within the twenty-five-foot-wide side setback. However, the application stated the side setback as "N/A [not applicable]."

Despite proposing construction within the side setback area, which should have been treated as an alteration of or expansion to a nonconforming structure under whatever version of § 404 of the Zoning Bylaws was in effect at that time,[5] the 2005 application was acted on by the Zoning Administrative Officer rather than being referred to the ZBA.  The Zoning Administrative Officer approved it on November 17, 2005 and it became final without appeal.

The project had also received a letter dated September 27, 2005 from the state Agency of Natural Resources (ANR) regarding the requirements of state law for the

_____

[5] See footnote 1, above.

project.  That letter, based on a site visit taken on August 8, 2005 by an ANR employee, described the former boathouse as having been located "landward of" the lake, stated that the reconstructed boathouse was also proposed to be located landward of the lake, and stated that the existing alignment of the stream would be retained, with the reconstructed boathouse being placed northerly of the stream.  Condition 2 of the ANR letter required that "[t]he reconstructed boathouse shall be landward of the existing shoreline."  The ANR letter stated that "[t]he streambed will be stabilized with existing stone and stone from an existing stone jetty, located north of the boathouse, which will be removed from the lake;" and that "[t]he removal of the existing jetty will provide access between the lake and the reconstructed boathouse."  No issues relating to the compliance of the current construction with the ANR letter or with any ANR regulations are before the Court in the present appeal.

Applicant demolished the former boathouse and, in 2006, constructed the boathouse in its current location (the as-built boathouse).  In addition to completing work on the as-built boathouse, Applicant constructed a 60-foot-long concrete retaining wall at the property boundary in approximately the same location as the southerly wall of the former boathouse, but much longer and taller than the foundation or footings of the former boathouse.  Applicant constructed an extension of the southerly wall of the as-built boathouse towards the west, on the northerly bank of the stream.  Applicant also constructed a concrete base or floor within the streambed, between the southerly retaining wall and the southerly wall of the as-built boathouse, and extending westwards almost the full length of the retaining wall, forming what Appellants refer to as a "sluiceway" for the stream outlet, conducting the stream between the southerly retaining wall and the as-built boathouse.

The as-built boathouse has two-and-a-half stories: a lower story open to the lake and an upper story-and-a-half including the open space within the sloped roof.  It has concrete foundation walls that are much higher above ground than the foundation or

7

footings of the former boathouse, so that they form the walls of the full lake-level story. The upper story-and-a-half is built over the lake-level story, with doors and windows facing onto a roofed deck area facing east towards the lake, and with an exit door on the westerly end that will require a short flight of steps down to ground level. Three dormers with windows are located in the north-facing slope of the roof. The upper story-and-a-half is a finished open room that is served by electricity, but has no plumbing, heating or other utilities; the lake-level story has a water supply.

The poured concrete foundation of the as-built boathouse extends approximately five feet above the current surrounding ground level at the northeastern (lake) end of the building, and tapers to approximately two feet above the current surrounding ground level at the northwesterly corner.

A one-and-a-half story clapboard structure is built on the concrete foundation of the as-built boathouse, forming the ceiling of the lake-level boathouse story of the structure. The roof of the as-built boathouse extends two feet beyond its end walls on the east and the west sides of the building, and extends a foot-and-a-half beyond its side walls on the north and the south sides.

The as-built boathouse occupies a footprint of approximately 21' 8½" in width and approximately 38' 6" in length, with the walls of the structure having a width of approximately 18' 8½" and a length of approximately 34' 6". The footprint of the as-built boathouse is approximately four feet longer than the former boathouse, and only a few inches wider. The wooden structure of the as-built boathouse extends above the foundation approximately 15 feet to the peak of the roof. As both the height of the foundation of the as-built boathouse and the height of the wooden superstructure are greater than the corresponding features of the former boathouse, the peak of the roof of the as-built boathouse is therefore approximately at least five to eight feet higher above the surrounding ground than was the peak of the roof of the former boathouse, although it is difficult to determine the change in elevation of that surrounding ground.

The as-built boathouse occupies a larger above-ground volume of the side setback area than did the former boathouse, as well as a larger lateral extent. Because of the steeper roof and the higher elevation of the roof peak, the upper story of the as-built boathouse also obstructs more of the view from Appellants' deck towards the northerly end of the lake than did the former boathouse.

In 2007, Applicant sought to amend the 2005 zoning permit to obtain approval for the as-built boathouse. Applicant did not apply for any permit for the additional concrete work that became the southerly boundary wall, the extension of the southerly wall of the as-built boathouse, or the concrete base for the stream. The application was filled out at the January 2, 2007 ZBA meeting, and then was ruled on by the ZBA at the same hearing. No separate decision was issued, and the undated, unsigned minutes for this hearing were not subsequently approved by vote of the ZBA.

The 2007 application stated the "existing use and occupancy" of the building as "BOATHOUSE – AMENDMENT OF EXISTING PERMIT" and stated the "proposed use and occupancy" of the building as "BOATHOUSE & SLEEPING QUARTERS." The 2007 application stated the building length as "34 [feet]," stated the width as "16" [feet], and stated the number of stories as "2." Although the 2007 application stated the building footprint as 34' x 16', it also stated the square footage as 600 square feet, although that length multiplied by that width yields an area of 544 square feet.

Motion for Reconsideration, and Remaining Merits

Relief pursuant to a motion to reconsider is "an extraordinary remedy that should be used sparingly." In re Bouldin Camp – Noble Road, No. 278-11-06 Vtec, slip op. at 1 (Vt. Envtl. Ct. Sept. 13, 2007) (Wright, J.). The limited functions of a motion for reconsideration are "'to correct manifest errors of law or fact' on which the decision was based, to allow the moving party to present newly discovered or previously unavailable evidence, to prevent manifest injustice, or to respond to an intervening change in the

9

controlling law." In re Vanishing Brook Subdivision, No. 223-10-07 Vtec, slip op. at 4 (Vt. Envtl. Ct. July 10, 2008) (Wright, J.) (quoting 11 Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 2810.0). Because of these narrow purposes, motions to reconsider are usually denied. In re South Village Communities, LLC, No. 74-4-05 Vtec, slip op. at 2 (Vt. Envtl. Ct. Sept. 14, 2006) (Durkin, J.) (citing 11 Wright, Miller, & Kane, supra, § 2810.0).

However, as the parties agreed that the motion for reconsideration would be considered together with the remaining merits for trial, the Court has fully considered the issues raised by the motion for reconsideration and its response, in light of the evidence at trial, as illustrated by the site visit. The Court declines to change the result of the summary judgment decision.

First, subsection 1 of § 404, governing nonconforming uses, does not apply to the present application, as the single-family dwelling use and its accessory boathouse use are conforming, permitted uses. § 206, Permitted Uses (1), (8). Rather, the former boathouse was a nonconforming structure, due to its failure to meet the side setback dimensional requirements, although it housed a permitted use. Compare 24 V.S.A. § 4303(14), and § 602 of the Zoning Bylaws (definition of "nonconforming structure"), with 24 V.S.A. § 4303(15), and § 602 of the Zoning Bylaws (definition of "nonconforming use"). Under the present statute, municipalities are required to define in their zoning bylaws how all three types of nonconformities (nonconforming uses, structures, and lots) are to be addressed, including the extent to which a nonconformity may change or expand. 24 V.S.A. § 4412(7).[6] Section 404(2) of the 2006 Zoning Bylaws,

---

[6] In re Miserocchi, 170 Vt. 320 (2000), was decided under an earlier version of the state statute, and does not require a different result. It was decided at a time during which the statutory language authorizing towns to regulate noncomplying structures had for a time been repealed, leaving only the language authorizing towns to regulate nonconforming uses, even though many zoning bylaws had retained older provisions that continued to regulate noncomplying structures. That anomaly was cured by the

adopted after that statutory authority was enacted, allows the alteration or expansion of a nonconforming structure, but only "providing such action does not increase the degree of nonconformance."

The state statute also authorizes municipalities to provide in their zoning bylaws for waivers to reduce dimensional requirements in defined circumstances. 24 V.S.A. § 4414(8). The 2006 Zoning Bylaws do not provide for waivers of the side setback dimensional requirement.

The as-built boathouse increases the "degree of nonconformance" with the side setback requirement, as compared with the smaller former boathouse, even though it itself is located five feet farther from the boundary line, because it is a larger structure and occupies a larger volume of the setback area. The Zoning Bylaws require that the required yard or setback area be entirely free of structures or parts of structures; that is, they "shall not project into a required yard." See § 312. The enlargement of the existing boathouse within the side setback area therefore is not eligible for conditional use approval under the terms of § 404(2) of the Zoning Bylaws, because the proposal would increase the degree of nonconformance. E.g., In re Dunnett, 172 Vt. 196, 202–03 (2001) (affirming denial of enlargement of portion of building within side setback area under nonconforming structure provisions of bylaw); In re Appeal of Tucker, No. 123-7-98 Vtec (Vt. Envtl. Ct. Aug. 2, 1999) (Wright, J.) (permit allowing construction of one-story building extending into side setbacks does not authorize expansion to two stories within the setbacks, even though two-story building would not violate height limitations or extend laterally any farther into setbacks), aff'd, No. 1999-399 (Vt. Mar. 10,

extensive statutory amendments enacted in 2004, prior to the adoption of the 2006 Zoning Bylaws. Zoning ordinances are interpreted according to the same rules as statutes. In re Trahan, 2008 VT 90, ¶ 19 (citing In re Gregoire, 170 Vt. 556, 559 (1999) (mem.)). In interpreting the 2006 Zoning Bylaws, therefore, the Court will presume that the drafters were mindful of relevant existing laws. In re Grievance of Danforth, 174 Vt. 231, 238 (2002) (citing State v. Read, 165 Vt. 141, 147 (1996)).

2000) (unpublished mem.); see also In re Curry Variance Application, No. 222-10-07 Vtec, slip op. at 7 (Vt. Envtl. Ct. Feb. 5, 2009) (Wright, J.) (extension of roof overhangs into side setback area enlarged or expanded nonconformity); In re Edgar Northshore Dr. Variance Application, No. 292-12-07 Vtec, slip op. at 5–7 (Vt. Envtl. Ct. Feb 5, 2009) (Wright, J.) (additional height added to pre-existing nonconforming structure within setback area enlarged nonconformity); In re Rouleau Property Appeals, Nos. 231-12-04 Vtec, 28-2-05 Vtec, 29-2-05 Vtec, 192-9-05 Vtec, 28-2-05 Vtec, and 193-9-05 Vtec (Vt. Envtl. Ct. Nov. 17, 2006) (Wright, J.) (denying application to relocate building within shoreline setback because it would occupy a formerly clear area within shoreline setback); Appeal of Barnes, No. 154-8-04 Vtec, slip op. at 6–7 (Vt. Envtl. Ct. May 18, 2005) (Wright, J.) (additional height added to pre-existing nonconforming structure within setback area increased nonconformity).

Moreover, all that Applicant was authorized to construct by the 2005 Permit was a new 15′ x 35′ single-story boathouse, located five feet farther north than the former boathouse. The as-built boathouse represents an expansion within the setback area that is larger than that authorized by the 2005 Permit, regardless of whether it is larger than the former boathouse. As the 2006 Zoning Bylaws do not provide for conditional use approval for such an expansion, and do not provide for a waiver of the side setback dimensional requirement, the 2007 application now before the Court cannot be approved.

Similarly, all that is before the Court in the present proceeding is what was before the ZBA as proposed by the 2007 application: a two-story, 34′ x 16′ boathouse, five feet northerly of the former boathouse. The wall-to-wall dimensions of the as-built boathouse building are larger than 34′ x 16′, and the building has an additional three feet of width and four feet of length due to the roof overhangs, which would require a further amendment to the 2007 application, even if construction within the side setback area could have been approved in this proceeding.

12

Applicant also argues that the southerly retaining wall and the concrete base to the streambed were "necessary" to the construction authorized in the 2005 permit, and therefore should not require a separate zoning permit. If the additional concrete work had been listed on the application for the 2005 permit as part of the project, it would have been covered by the 2005 permit. It was not covered by the 2005 permit; so that if field conditions during construction had necessitated[7] changes to the project as approved in the 2005 permit, Applicant or his engineer should have sought amendments to the permit to reflect those changes. On the other hand, if the additional concrete features are considered to be part of the boathouse structure, rather than to be separate structures, they increase the nonconformity of the as-built boathouse even more than does the boathouse structure itself.

At present, neither the southerly retaining wall, the westerly extension of the southerly wall of the as-built boathouse, nor the concrete base to the streambed, has a zoning permit. A zoning permit is required because each falls within the definition of a structure, and the 2006 Zoning Bylaws do not exempt boundary walls or retaining walls, except on operating farms. § 602, "Structure." The absence of a permit for those structures is not otherwise before the Court in the present appeal, as this is not an enforcement case. Similarly, if any of those structures also require any ANR approval regarding their effect on the stream, that question is not before the Court in the present appeal.

Because the upper story of the as-built boathouse obstructs more of the view from Appellants' deck towards the northerly end of the lake than did the former boathouse, Appellants understandably focused on this obstruction at trial and

---

[7] This decision makes no findings or conclusions as to the necessity for the retaining wall, whether the southerly footings for the former boathouse could have been left in place, or whether there have been intervening changes to the contours of either party's property or to the shoreline.

demonstrated it during the site visit. However, in the 2006 Zoning Bylaws, only the site plan approval standards address the compatibility of a project with adjacent properties, and those standards do not apply to a residential accessory building. See §§ 205(A), (D). That is, if the upper story-and-a-half of the boathouse had been built to its current elevation but closer to the house, outside the side setback, the fact that it obstructs Appellants' formerly open view is not regulated by the 2006 Zoning Bylaws.

Question 5 of the Statement of Questions

Because the present application for conditional use approval was filled out as well as ruled on at the January 2, 2007 meeting of the ZBA, the notice or warning required for conditional use review by 24 V.S.A. § 4464(a)(1) did not occur. No evidence was presented at trial to show that reasonable efforts were made to provide adequate posting and notice. 24 V.S.A. § 4464(a)(5). Therefore, even if the as-built location and size of the new boathouse had been eligible to be considered for conditional use approval under § 404, the ZBA's procedure did not meet the requirements of 24 V.S.A. §§ 4464(a)(1) or (5). Question 5 of the Statement of Questions is therefore resolved in favor of Appellants.

Question 1 of the Statement of Questions

No evidence was presented at trial to show that the January 2, 2007 meeting minutes were ever adopted by the ZBA so as to constitute the written decision of the ZBA under 24 V.S.A. § 4464(b)(1), even though the appeal was allowed to be filed from the oral decision made at the meeting. Therefore, even if the as-built location and size of the new boathouse had been eligible to be considered for conditional use approval under § 404, the ZBA's minutes did not constitute a decision meeting the requirements of 24 V.S.A. § 4464(b)(1). Question 1 of the Statement of Questions is therefore resolved in favor of Appellants.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the as-built boathouse does not qualify to be considered for conditional use approval under § 404 of the 2006 Zoning Bylaws and the application for conditional use approval is therefore DENIED, concluding this appeal.

Done at Berlin, Vermont, this 23rd day of April, 2009.

_____
Merideth Wright
Environmental Judge