STATE OF VERMONT

SUPERIOR COURT                                 ENVIRONMENTAL DIVISION
                                               Docket No. 98-7-17 Vtec

| | |
|---|---|
| Poultney Properties LLC Change of Use & SP App. | DECISION ON MOTION |

Poultney Properties, LLC, appeals the partial denial of its application for change of use and site plan approval by the Town of Poultney Development Review Board (DRB). Neal Vreeland and a group of Poultney residents, Concerned Citizens of Poultney, joined the appeal to oppose the application. Before the Court are Mr. Vreeland and Poultney Properties' cross-motions for summary judgment.

Poultney Properties is represented by David Cooper, Esq., and David Carpenter, Esq. Mr. Vreeland is self-represented. Concerned Citizens of Poultney is represented by its spokesperson, C.B. Hall.

**Standard of Review**

We will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a), applicable through V.R.E.C.P. 5(a)(2). We accept as true all of the nonmovant's allegations of fact, as long as they are supported by affidavits or other evidence. White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999) (citation omitted). In considering cross-motions for summary judgment, the Court considers each motion individually and gives the opposing party the benefit of all reasonable doubts and inferences. City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332.

**Factual Background**

We recite the following facts based on the record now before us and for the sole purpose of deciding the pending motions. The following are not specific factual findings with relevance

1

outside of this summary judgment decision. See <u>Blake v. Nationwide Ins. Co.</u>, 2006 VT 48, ¶ 21, 180 Vt. 14 (citing <u>Fritzeen v. Trudell Consulting Eng'rs, Inc.</u>, 170 Vt. 632, 633 (2000) (mem.)).

1. Poultney Properties, LLC, owns a single parcel on Beaman Street (the Property) in Poultney, Vermont. The Property is 1.76 acres.

2. The Property contains four separate buildings with street addresses of 53, 55, 57, and 61 Beaman Street. The buildings predate the Poultney Unified Bylaws (Bylaws) and have shared a single parcel since before the Bylaws were enacted.

3. The buildings at 55 and 61 Beaman Street have not been occupied for three years. 57 Beaman Street has been used continuously as a woodworking shop.

4. The former owner of the Property, Vermont Electro-Mechanical Assembly Services, used the multiple buildings for light industry.

5. The buildings on the Property do not comply with the Bylaws' setback requirements. This nonconformity predates the Bylaws.

6. The Property is accessed from streets with residentially zoned frontages, which does not comply with the Bylaws. The Property's access predates the Bylaws.

7. The Property is in the Village Industrial District. Light industrial and retail uses are permitted in the District, subject to site plan review.

8. On February 23, 2017, Poultney Properties submitted three applications relating to the Property to the DRB. The DRB merged these applications into one.

9. Poultney Properties seeks to remove the historic barn at 53 Beaman Street, to install a college-run woodworking shop and classroom at 55 Beaman, to continue the woodworking shop at 57 Beaman, and to introduce a retail store at 61 Beaman.

10. Poultney Properties proposes to modify 61 Beaman Street to accommodate the retail use by adding a loading area and altering the front entrance.

11. Poultney Properties proposes the following changes to the Property: the addition of a chain barrier at the rear of the loading area to modify vehicle circulation on the Property; a reduction in the number of parking spaces from 36 to 29; construction of a six-foot-high wooden fence to provide a screen on the western side of the parking lot, which abuts

residential property; and increased amounts of landscaped and grassed area on the Property.

12. The retail store will require new lighting, a new loading area, more frequent truck deliveries, new truck entry and exit routes, a dumpster, modified hours of operation relative to the prior use, and increased customer circulation.

13. The Property requires a new snow removal plan.

14. On June 28, 2017, the DRB approved the application with respect to 53, 55, and 57 Beaman. It denied the application for a retail store at 61 Beaman.

15. Poultney Properties timely appealed the DRB's denial of the retail store to this Court on July 26, 2017.

**Discussion**

The issues presently before the Court require us to decide whether the DRB improperly denied the retail store at 61 Beaman Street. Mr. Vreeland offers a number of Bylaws provisions to suggest that the application was properly denied. Alternatively, he and Concerned Citizens of Poultney argue that there are disputes of material fact relating to the details of the site plan that warrant a trial.[1]

Poultney Properties asserts that any aspects of its proposal that do not comply with the Bylaws are protected as preexisting nonconformities. Further, in its view, summary judgment is appropriate because there are no material facts in dispute.

For the reasons set forth below, we conclude that the Bylaws provisions offered by Mr. Vreeland do not apply to the present application because of the preexisting nonconforming nature of the Property. But because there are disputes of material fact surrounding the site plan application, summary judgment is inappropriate on that issue.

---

[1] Concerned Citizens of Poultney has not moved for summary judgment but has provided responsive briefings on the cross-motions.

Mr. Vreeland originally moved for summary judgment in this matter. Later, in Mr. Vreeland's opposition to Poultney Properties' motion for summary judgment, he asserted that there are genuine disputes of material fact. Because he continues to assert the arguments of his summary judgment motion, we treat his contradictory position that a trial is necessary as an argument in the alternative.

3

**I.      Whether Bylaws § 1411 requires denial of the application.**

We must first determine whether Poultney Properties proposes a new nonconforming use of the Property that is disallowed by § 1411.  Section 1411 mandates that "only one principal building shall be placed on a zoning lot."  A principal building is the structure "in which is conducted the main or principal use of the lot."  Bylaws Article XIII.

The parties agree that four buildings located on one parcel do not comply with § 1411.  The parties dispute whether this nonconformity involves nonconforming structures or a nonconforming use of the Property.  Specifically, the parties disagree over the meaning of nonconforming use: whether use is evaluated with respect to the use of the parcel as a whole, or based on the respective uses of the individual buildings.

Poultney Properties argues that use should be evaluated on a building-by-building basis.  It asserts that the two uses it proposes, light industrial and retail, are permitted in the Village Industrial District so a nonconforming use is not at issue.  It asserts that § 1411 relates to the placement of buildings on a lot and not to the number of uses allowed per parcel.  Therefore, while § 1411 renders the Property's multiple buildings nonconforming structures, it does not generate a nonconforming use.

Mr. Vreeland and Concerned Citizens of Poultney argue that use is determined at the level of the parcel as a whole.  Poultney Properties, they argue, proposes to use the Property to combine multiple permitted uses on one parcel in violation of § 1411.  They present the use as retail mixed with industry.  Their interpretation of § 1411 limits each parcel to a single permitted use, as well as a single principal building, barring the combination of multiple uses on one parcel.  Further, they allege that historically the Property has not been used to combine multiple uses, but has only hosted the single light industrial use, so the proposed combined use is newly nonconforming and not lawfully preexisting.

We use the familiar tools of construction to interpret a zoning ordinance.  Ultimately, the construction we adopt must implement the legislative purpose. In re Stowe Club Highlands, 164 Vt. 272, 280-81 (1995) (citation omitted).  We impart words with their plain meaning and give effect to "the whole and every part of the ordinance." In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262.  If the plain meaning is not apparent, we "attempt to discern the intent from other

sources without being limited by an isolated sentence." Stowe Club Highlands, 164 Vt. at 280. The same principles apply when we interpret a statute. See In re Wal-Mart Stores, Inc., 167 Vt. 75, 84 (1997).

Section 1411 permits one principal building per lot in Poultney by its plain language. Pursuant to the definition laid out in Bylaws Article XIII, a principal building houses the main or principal use of the lot. Taking these provisions together, the Bylaws limit each principal building to one principal use. It follows that they also limit each lot to one principal use when the lot contains only one principal building.

While § 1411 requires one use when there is one building on the parcel, the Bylaws do not explicitly direct how a preexisting parcel with multiple buildings, which separately house permitted uses, should be treated. We thus interpret § 1411 to limit a lot with one principal building to one principal use, but not to require one use on a lot where multiple buildings already exist. For guidance in the latter circumstance, we must consider the Bylaws as a whole and the legislative intent behind them, as well as relevant case law.

### a. The Property contains nonconforming structures, not a nonconforming use.

Poultney Properties argues that the Property's nonconformity derives from its buildings, lot lines, and dimensions, not its use. Mr. Vreeland and Concerned Citizens of Poultney counter that Poultney Properties proposes a newly nonconforming mixed use of the Property as a whole.

Generally "setbacks and size, shape and placement of buildings on the property" define nonconforming structures, while nonconforming uses relate to "the activities that may take place within a certain area." In re Miserocchi, 170 Vt. 320, 328 (2000). The Bylaws reinforce these definitions. See Bylaws §§ 701, 707 (defining nonconforming uses and nonconforming structures). Here, it is the distance between the preexisting structures and their relationship to the boundary lines of the lot that introduce the nonconformity, while the activities proposed by Poultney Properties are permitted uses in the Village Industrial District. The only nonconformities on the Property are structural.

The separate buildings of the Property should be treated as functionally divided for the limited purpose of evaluating the use of each individual structure. See In re Appeal of Wesco,

5

Inc., 2006 VT 52, ¶ 5-8, 180 Vt. 520 (affirming that the two separate uses of the subject property should be evaluated separately and approved if each met the zoning requirements).[2]

Further, the Bylaws conceive of use on a structure-by-structure basis, not at the level of the parcel as a whole. For instance, a nonconforming use can be "enlarged on the same lot" or "extended throughout [a] building," subject to conditions. Bylaws §§ 703, 704. This language conceives of using part of a lot or part of a building, not the parcel as a whole. See, e.g., Hindsdale v. Village of Essex Junction, 153 Vt. 618, 619-20 (1990) (involving the expansion of a nonconforming commercial use from part to the whole building). Viewing use at the parcel level complicates the application of other Bylaws provisions.

Concerned Citizens of Poultney warns that this approach invites any combination of uses on one lot that is not specifically barred by the Bylaws. It argues that because a contractor's yard, a recycling center, and a medical clinic are all permitted uses in the Village Industrial District, they could be united on one lot.

First, our decision is limited to situations in which multiple buildings predating the Bylaws stand on one parcel and each permitted use occurs in a separate structure. Section 1411 prevents the construction of any new nonconforming lots in Poultney or the combination of multiple uses in one structure.

Second, the uses are permitted in the District as long as they continue independently. The use proposed by Poultney Properties is not a single mixed use of light industrial and retail.[3] The Property will be used to support independent and distinct uses in separate buildings that happen to share a lot.

Third, if the multiple uses are permitted individually in the District, conducted in separate buildings on the lot, and meet the requirements of zoning permit review under § 1502,

---

[2] Wesco involved a municipal ordinance that expressly allowed more than one use per lot. See Appeals of Wesco, Inc., Nos. 209-12-97 Vtec, 215-9-00 Vtec, 222-9-00 Vtec, 175-10-01 Vtec, 24-1-02 Vtec, slip op. at 9-10 (Vt. Envtl. Ct. Jan. 27, 2005) (Wright, J.), aff'd, 2006 VT 52. While the Bylaws are not as direct in permitting multiple uses when a parcel contains multiple buildings, this difference does not affect our decision or Wesco's support for the proposition that the different uses on the Property can be functionally divided.

[3] The parties' discussion of the specific use of "Commercial/Residential – Mixed Use," set out in Article III of the Bylaws, is misplaced. This use is a singular use, occurring in a single structure, that does not involve the use of independent buildings for separate permitted uses. It is not a combination of multiple uses in one structure, or on one lot, because the use itself is a single use. The same applies to the parties' discussion of "Professional Office/Residential Mixed Use," defined in Article XIII.

conditional use review, or site plan approval, there is no basis for prohibiting their coexistence. While a long-established goal of zoning is to "bring about the orderly physical development of the community by confining particular uses to defined areas," Vermont Brick & Block, Inc. v. Village of Essex Junction, 135 Vt. 481, 483 (1977), the Bylaws allow and encourage retail and light industrial uses in the Village Industrial District.

The permitted uses at 55, 57, and 61 Beaman Street will remain distinct and independent, in separate structures. Poultney Properties proposes to change the use of the nonconforming structure at 61 Beaman from a permitted industrial use to a permitted retail use. When use is "changed from one permitted use to another, and there is no change in the degree that the structure is noncomplying, court decisions are generally favorable to the conversion." Wesco, 2006 VT 52, ¶ 26 (citing Miserocchi, 170 Vt. at 327).

For these reasons, we conclude that the nonconformity on the Property is structural, not use-based. Further, we conclude that use must be evaluated structure-by-structure, not at the level of the parcel as a whole.

**b.      The Property's nonconforming structures are not also nonconforming uses.**

The Vermont Supreme Court has previously ruled on the issue of whether a single parcel with multiple buildings gives rise to a nonconforming use. In re Gregoire, 170 Vt. 556 (1999). Gregoire involved a single parcel with six preexisting, separate buildings in Colchester, Vermont. Each building supported a single-family dwelling, a use permitted in the district. The Colchester ordinance expressly disallowed multiple buildings or uses on one parcel. The Vermont Supreme Court overturned the Environmental Court's conclusion that use should be evaluated building-by-building and that the case only involved permitted uses. Id. at 558-59. The Supreme Court determined that the owners made nonconforming use of the parcel as a whole "as a situs for multiple detached single family dwellings." Id. at 557.

As set forth above, we do not reach the same result. Changes in the statutory scheme regulating nonconformities and differences in the applicable ordinances distinguish Gregoire from the present matter.

Gregoire was decided under a prior statutory scheme. 24 V.S.A. § 4408 formerly controlled nonconformities and defined nonconforming uses, structures, and lots. The statute

7

was repealed.  2003, No. 115 (Adj. Sess.), § 119(c).  Now the statutes directly relevant to nonconformities are 24 V.S.A § 4303(13-16), which sets out definitions relating to nonconformities, and 24 V.S.A. § 4412(7), empowering municipalities to regulate the expansion and phasing-out of nonconformities.

In Gregoire, under § 4408, the applicable definition of nonconforming use was "use of land *or a structure* which does not comply with all zoning regulations . . . ."  24 V.S.A. § 4408(a)(1) (emphasis added).  By contrast, the definition in the modern statute and the Bylaws is "use of *land* that does not comply with the present bylaws . . . ."  Bylaws Article XIII; see also 24 V.S.A. § 4303(15) (emphasis added).

Under the former § 4408, "all noncomplying structures [were] also [] nonconforming uses" because the definition of nonconforming use included nonconforming structures.  Miserocchi, 170 Vt. at 323-24; see also In re Letourneau, 168 Vt. 539, 546-47 (1998).  In Gregoire, consistent with the prior statute, the structural nonconformity of multiple buildings to one lot was also considered a nonconforming use of the parcel.  170 Vt. at 556 ("[T]he lot in question did not conform to zoning regulations because it contained multiple structures. . . .").

The Vermont Supreme Court, by three-justice panel, has addressed the change in statute.  In re Snelgrove Permit (Boathouse Replacement), No. 2009-162, 2010 WL 286742 (Vt. Jan. 15, 2010) (unpub. mem.).[4]  The Supreme Court noted that the new statutory scheme no longer classifies every structural nonconformity as a nonconforming use of property.  Id. at *3.  Instead, municipalities have discretion in distinguishing and regulating different types of nonconformities:

> Applicant relies on In re Miserocchi, 170 Vt. 320 (2000), for his argument that a structure within a setback area is a nonconforming use.  Miserocchi held that a barn within a setback area is a noncomplying structure, and that, under 24 V.S.A. § 4408(b), all noncomplying structures are also nonconforming uses.  Miserocchi, 170 Vt. at 323-24.  That statute has since been repealed.  2003, No. 115 (Adj. Sess.), § 119(c).  The new statute directs local municipalities to define how nonconformities will be addressed.  24 V.S.A. § 4412(7).  Therefore, we are not bound by the reasoning of Miserocchi and turn to the provisions of the Town's bylaws to determine how the boathouse should be classified.

_____

[4] Snelgrove Permit is not binding precedent because it was decided by a three-judge panel but we consult it as the only source of guidance on the impact of § 4408's repeal and the changes in statutory language.

8

Id.

The change in the statutory definition of nonconforming uses also reflects the transition away from defining nonconforming structures as nonconforming uses. As noted above, § 4408(a)(1)'s former definition of nonconforming uses—"use of land *or a structure* which does not comply with all zoning regulations. . . ."—was changed to "use of *land* that does not comply with the present bylaws . . . ." 24 V.S.A. § 4303(15) (emphasis added). It may appear that the omission of structures from the new definition of nonconforming uses endorses Mr. Vreeland and Concerned Citizens of Poultney's view that use should be considered at the land level, and not the structure level. But the Supreme Court's interpretation of the statutory change indicates that the omission of structures from the definition of nonconforming use was necessary to avoid defining all nonconforming structures as nonconforming uses, and to give municipalities more discretion in regulating nonconformities.[5] Snelgrove Permit, 2010 WL 286742, at *3.

The Property contains nonconforming structures, as did the lot in Gregoire, but the statutory scheme no longer requires us to conflate nonconforming structures and nonconforming uses. Instead we look to how Poultney chose to define and address its nonconformities. The Bylaws do not define nonconforming structures as nonconforming uses. See Bylaws §§ 701, 707; see also Stowe Club Highlands, 164 Vt. at 278 (finding that even under the former statute, "the definitions in the Stowe zoning ordinance carefully differentiate [nonconforming structures and uses]. Under these definitions, a noncomplying building is not a nonconforming use." (citation omitted)). We take our lead from the Bylaws and do not define the Property's structural nonconformity as a nonconforming use.[6]

---

[5] Additionally, defining use as a 'use of land' does not mean 'use of the whole parcel.' Where the Legislature intended to define nonconformity at the lot or parcel level, it did so. See 24 V.S.A. § 4303(13), (15) (defining "Nonconforming lots or parcels" separate and apart from "Nonconforming use"). Instead, this language incorporates those uses of land that do not necessarily involve structures, such as contractor's yards or parks, without implicating the entire lot or parcel.

[6] In addition to the differences in the statutory scheme we also note that "municipal approaches have varied considerably" in regulating nonconformities. In re Casella Waste Management, 2003 VT 49, ¶ 11, 175 Vt. 335. The Colchester ordinance at issue in Gregoire stated that "*in no case* shall there be more than one such building or use on one lot . . . ." Colchester Zoning Regulations § 11.14 (1976) (currently § 1808) (emphasis added). By contrast, § 1411 of the Bylaws does not expressly disallow multiple uses per parcel in all situations. It provides no guidance when multiple buildings are located on one parcel and does not compel a single-use view of the Property.

Considering the intervening statutory change and the Bylaws' clear distinction between nonconforming structures and uses, we cannot classify the structural nonconformity of the Property as a nonconforming use of the Property as in Gregoire. For these reasons, we **DENY** Mr. Vreeland's motion for summary judgment on the § 1411 question and **GRANT** Poultney Properties' motion on this issue, which resolves Question 5 of Poultney Properties' Amended Statement of Questions.

## II. Whether § 601(E) requires denial of the application.

As part of site plan approval under § 1203, applications must comply with § 601(E), which dictates: "Access to parking, loading, and service areas for commercial and industrial uses shall not be from streets with residentially zoned frontages." Section 601 states that "[e]xcept as otherwise provided, for every building hereafter erected, extended, or changed in use," its provisions apply.

The parties agree that access to the Property does not comply with § 601(E). Poultney Properties argues that § 601(E) does not apply because the Property's access from residentially zoned frontages is a lawful nonconforming structure that predates the Bylaws. Mr. Vreeland and Concerned Citizens of Poultney assert that § 601 applies by its terms because Poultney Properties proposes a change in use from light industrial to retail.

Poultney Properties does propose a change in use at 61 Beaman Street. But § 601 does not apply because of its conditional "[e]xcept as otherwise provided" term. The Bylaws do provide otherwise, exempting the Property's access as a preexisting nonconforming structure under Article VII.

The Bylaws do not explicitly define a lot's access points as structures for the purpose of categorizing them as nonconforming structures under Article VII. As discussed above, nonconforming structures generally involve "setbacks and size, shape and placement of buildings on the property, while nonconforming uses relate to "the activities that may take place within a certain area." Miserocchi, 170 Vt. at 328. Section 707 of the Bylaws categorizes "such things as parking, lighting, buffers" as nonconforming structures. Because the Property's access points

10

relate to the dimensional and physical features of the lot, akin to parking and buildings, as opposed to how the lot is used, they are nonconforming structures.[7]

As a lawful nonconforming structure, the Project's access from streets with residentially zoned frontages "may be allowed to exist indefinitely," subject to conditions on the enlargement of the nonconformity. See Bylaws § 707. Because Poultney Properties does not propose any physical modification or other change of the access, § 601(E) does not apply. We **GRANT** Poultney Properties' motion for summary judgment on § 601(E) and Question 3 of the Amended Statement of Questions and **DENY** Mr. Vreeland's motion.

**III.    Whether § 415 requires denial or increased review of the application.[8]**

Section 415(A-F) outlines specific structural requirements for a "Retail Store" as part of conditional use review. While the default setback in the Village Industrial District for property bordering a residential district is 30 feet under § 501, the requirement at issue here, § 415(C), mandates "a minimum setback of one hundred (100) feet from all adjacent residential property."

It is not disputed that 61 Beaman Street fails to meet the default 30-foot setback requirement, is a nonconforming structure in this regard, and would necessarily fail to comply with the 100-foot requirement of § 415(C). Poultney Properties argues that § 415(C) is relevant in conditional use review, while its application is only subject to site plan review.

Concerned Citizens of Poultney argues that the 100-foot setback of § 415(C) applies to the proposed retail store because it is the sole mention of applicable setbacks for retail stores in the Bylaws. It asserts that because 61 Beaman will go from noncompliance with the default 30-foot setback under § 501 to noncompliance with the 100-foot setback for retail stores under § 415(C), its noncomplying setback is enlarged by 70 feet, in violation of § 710. See Bylaws § 710 (limiting the enlargement of nonconforming setbacks and requiring increased review of enlargements).

---

[7] To the extent Mr. Vreeland represents parking on the Property as a nonconforming use that was subsequently abandoned, the same reasoning applies.

[8] Only Poultney Properties moved for summary judgment on this issue.

11

By its plain terms, Article III's Table of Uses subjects retail stores in the Village Industrial District to site plan review under Article XII, not to conditional use review under Article IV.[9]  The Table only requires conditional use review of retail stores in the Lake Shore District.

Site plan review does not impose an increased setback for retail stores.  The setback (and other dimensional) requirements of § 415 do not apply.

Concerned Citizens of Poultney argues that § 415 should apply as the Bylaws' only explicit reference to setback requirements for retail stores.  But it offers no rationale for applying the requirements of a separate type of review just because it contains more specific limitations.  To do so would hold retail stores to the standards of conditional use review, regardless of the district and the Bylaws' intent, and render the distinction between conditional use review and site plan approval meaningless.  See Roy v. Woodstock Cmty. Trust, Inc., 2013 VT 100A, ¶ 55, 195 Vt. 427 (avoiding an interpretation "that would render [the statutory] language superfluous or lead to irrational results." (citing In re Lunde, 166 Vt. 167, 171 (1997))).

For the foregoing reasons, we **GRANT** Poultney Properties' motion on the § 415(C) issue and Question 2.

## IV.     Whether the application should be approved pursuant to § 1203 and Article VII.[10]

Because there are disputes of material fact relating to the sufficiency of the application under site plan review, this matter cannot be resolved on summary judgment.  Disputes relating to the landscaping, adequacy of screening, noise levels, and lighting require further factual development. The circulation patterns, the effects of the proposed chain barrier, the truck supply routes, and the overall safety considerations for suppliers, customers, and pedestrians require a trial.[11]

It is also not clear whether the renovations of 61 Beaman Street to prepare it for a retail use, especially construction of the new loading area, are enlargements under § 710 that are either prohibited or require enhanced review under § 711.  See Bylaws § 710(B), (C).  We

---

[9] Further, there is no indication that site plan review implicitly imposes some of the requirements of conditional use review.  Section 1203, governing site plan approval, explicitly names the other Bylaws sections it incorporates.  Section 415(C) is not among them.

[10] Only Poultney Properties moved for summary judgment on the § 1203 and Article VII issues.

[11] To the extent that Mr. Vreeland and Concerned Citizens of Poultney allege Poultney Properties made inconsistent statements on some of these topics, these concerns can be raised at trial.

therefore decline to decide Questions 1 and 4 of the Amended Statement of Questions and **DENY** Poultney Properties' request for site plan approval on motion.

## Conclusion

We conclude that §§ 1411 and 601(E) do not apply to the application presently before the Court because the Property contains preexisting nonconforming structures. Section 415 does not apply to the Property because the application is subject to site plan review, not conditional use review. We therefore **GRANT** Poultney Properties' motion for summary judgment on the §§ 1411, 601(E), and 415(C) questions. We **DENY** Mr. Vreeland's motion regarding §§ 1411 and 601(E). This resolves Questions 2, 3, and 5 of Poultney Properties' Amended Statement of Questions.

Because there are disputes of material fact surrounding the sufficiency of the application under site plan review and the degree of enlargement of the nonconforming structure, we **DENY** Poultney Properties' motion on these issues and leave Questions 1 and 4 for trial.

Electronically signed on November 26, 2018 at 11:02 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

13