STATE OF VERMONT

SUPERIOR COURT
Environmental Division Unit
Docket No. 40-3-19 Vtec

15-17 Weston Street NOV

### Decision on Cross Motions for Summary Judgment

The Keith S. Aaron Weston Street Trust (alternatively "the Trust" or "Appellant") seeks to overturn notice of alleged zoning violation No. 345151 ("the NOV") issued by the City of Burlington Zoning Administrative Officer ("Zoning Officer"), dated October 30, 2018, and served upon the Trust concerning its rental property at 15-17 Weston Street in the City of Burlington ("City"). When the City of Burlington Development Review Board ("DRB") upheld the NOV, the Trust filed a timely appeal with this Court.

Now pending before the Court are two motions for summary judgment. The first, filed on the Trust's behalf, asks this Court to conclude that the City had no authority to issue the NOV and that it therefore should be voided. The second motion, filed by neighbors Michael and Caryn Long ("Neighbors"), asserts that the undisputed facts concerning the duration and interruption of the Trust's rental of its property warrants that the NOV be upheld, and that the Court should enter summary judgment against the Trust. The City has filed memoranda in opposition to the Trust's motion and in support of the Neighbors' motion.

The Trust is assisted in this litigation by its attorney, John L. Franco, Jr., Esq.; the City is assisted by its attorney, Kimberly J. Sturtevant, Esq.; Neighbors are representing themselves in this matter.

### Factual Background

We recite the following background solely for the purposes of deciding the pending summary judgment motions; we understand that all of the background recited here are undisputed. This background recitation does not constitute factual findings, since factual findings can only be rendered after the Court completes a trial. Fritzeen v. Trudell Consulting Eng'rs, Inc.,

170 Vt. 632, 633 (2000) (mem.); *see also* Blake v. Nationwide Ins. Co., 2006 VT 48, ¶ 21, 180 Vt. 14.

1.      The Trust owns a three-unit residential rental property ("the Property"), located at 15-17 Weston Street in the City.  Keith S. Aaron first acquired the Property in his personal name on December 12, 1995 and then transferred it to the Trust several years later on October 22, 2000. Mr. Aaron serves as the sole trustee of the Trust.

2.      The Property is located in the City's Residential Low Density Zoning District ("RL District").

3.      Unit #1 on the Property is its largest, with five separate bedrooms, two additional rooms, and a single bathroom.  Unit #2 appears to be a studio apartment, with no separate bedroom but with two rooms, plus a single bathroom.  Unit #3 has a single bedroom, two additional rooms, and a single bathroom.

4.      The parties stipulated that at the time Appellant acquired the property and "since[,] unit #1 has been leased to and occupied by five unrelated adults, mostly college students."  Parties' Stipulated Statement of Uncontroverted Material Facts, filed Feb. 21, 2020, at p. 2 ¶ 5 (hereinafter "Stipulated Facts").

5.      The parties further stipulated that during Appellant's ownership there have been two interruptions of the occupancy of Unit #1 by five unrelated adults.  First, during the summer of 2013, there were only two unrelated adults occupying Unit #1 until mid-August.  We understand this reduced occupancy lasted for more than sixty days and likely began at the end of the 2012–2013 academic year.  Id. at ¶ 7.

6.      The second instance of reduced occupancy began in the fall of 2013, when some or all of the Unit #1 tenants (previously numbering five unrelated adults) either left voluntarily or were directed to leave by its owner (the Trust), due to their alleged "drug use and sales, removal of smoke detectors and damage to the property . . ., noise and loud parties, and complaints to the police."  All of the tenants abandoned the lease and left the property no later than the end of January 2014.  Id. at 2–3, ¶ 7.  We understand that no tenants lived at Unit #1 until the new rental year began sometime in June 2014.

7.      The parties do not disclose whether the five unrelated adults occupying Unit #1 during the 2012–2013 academic year were the same adults who occupied Unit #1 during the fall of the

*In re: 15-17 Weston Street NOV*, No. 40-3-19 Vtec slip op. (Vt. Super. Ct. Envtl. Div. Jan. 22, 2021) (Durkin, J.).

2013–2014 academic year. We understand that the tenants who began occupying Unit #1 in June 2014 were new to the property.

8. The term "functional family unit" is a defined term with significance under the applicable zoning regulations. The parties stipulated that at no time during the Trust's ownership did the Trust or its agents request or obtain from the City of Burlington Code Enforcement Office ("Code Enforcement Office") a determination that the use of Unit #1 constituted a "functional family unit" as described in the applicable zoning regulations. Id. at p. 2, ¶ 6.

9. On October 30, 2018, the City issued a NOV to Appellant, alleging Unit #1 was in violation of the Burlington Comprehensive Development Ordinance ("CDO"). The NOV alleged that occupying Unit #1 with more than four unrelated adults in the RL District was in violation of the definition of "family" in CDO Art. 13.

10. Appellant appealed the NOV to the Burlington Development Review Board ("DRB") on February 13, 2019. The DRB upheld the ZA's NOV and Appellant timely appealed the DRB's decision to this Court.

11. The focus of this litigation is the occupancy of Unit #1 by five or more unrelated individuals (most often college students).

## Legal Standard

We begin our analysis by reciting the general standard that a litigant must satisfy to prevail on a motion for partial summary judgment. The moving party must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" on the legal issues presented. V.R.C.P. 56(a), made applicable here through V.R.E.C.P. 5(a)(2). When considering any motion for summary judgment, the nonmoving party receives the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356. When considering cross-motions for summary judgment, the trial court considers each motion individually and gives the opposing party the benefit of all reasonable doubts and inferences. City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332. In determining whether there is any dispute over a material fact, "we accept as true allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." White v. Quechee Lakes Landowners'

-3-

Ass'n, Inc., 170 Vt. 25, 28 (1999) (citation omitted); V.R.C.P. 56(c)(1)(A). We begin our analysis with this legal standard in mind.

**Discussion**

This appeal presents us with a somewhat complicated legal quandary. It does not involve the more frequent topic of lawful, pre-existing non-conformities. Rather, the quandary presented here is whether an allegedly unlawful violation of zoning regulations that may have existed for many years can be prosecuted by a municipality. Our Supreme Court recently confirmed that a Vermont municipality loses its right to prosecute a zoning violation if it has failed to do so "within 15 years from the date [that] the alleged violation first occurred," quoting 24 V.S.A. § 4454(a). *See*, In re 204 North Avenue NOV, 2019 VT 52 ¶¶ 6–8; In re 204 North Avenue NOV, No. 160-11-17 Vtec slip op. at 2–4 (Vt. Super. Ct. Envtl. Div. Sept. 26, 2018) (Durkin, J).

In this appeal, the Trust argues in their motion for summary judgment that (1) 204 North Avenue sets a precedent that generates a "safe harbor" for violations that "first occurred" beyond the 15-year statute of limitations period defined in 24 V.S.A. § 4454(a); (2) Burlington CDO § 5.3.2 provides an exception to this safe harbor that is ultra vires; and (3) the rental of Unit #1 was previously litigated in a manner that would bar this NOV. *See* Appellant's Motion for Summary Judgment filed Feb. 21, 2020, at 2–7. The Neighbors, supported by the City, also seek summary judgment, pursuant to V.R.C.P. 56, contending that the interruptions in the Trust's use in 2013 and 2014 satisfy CDO § 5.3.2 and therefore the statute of limitations does not invalidate the NOV. *See* Neighbors' Cross Motion for Summary Judgment filed Feb. 26, 2020, at 2–3.

In addressing these issues below, we begin with a short discussion of the events and policies preceding 204 North Avenue to provide context for the interpretation of "first occurred." We next address whether CDO § 5.3.2 is ultra vires and its role in the Vermont Supreme Court's interpretation of 24 V.S.A. § 4454. As a final point, we examine whether the Trust's rental of Unit # 1 was previously litigated. Our legal analysis in this first section does not resolve all legal issues raised in Appellant's Statement of Questions, filed on March 26, 2019. We therefore attempt to address those remaining legal issues in other sections that follow in this Decision. However, since the parties appear to agree that the import of the Supreme Court's ruling in 204 North Avenue is most significant to this appeal, we begin our analysis here.

-4-

1. Whether the City's prosecution is barred by 24 V.S.A. § 4454(a).

Vermont municipalities have the authority and obligation to prosecute violations of their respective zoning regulations. 24 V.S.A. § 4452 (noting that a municipal zoning officer "shall institute in the name of the municipality" an action to prosecute any zoning violation. *See also*, In re Petition of Fairchild, 159 Vt. 125, 130 (1992) ("[T]he administrative officer must enforce the Town's zoning regulations and must not permit any development that is not in compliance with the [zoning] laws." (*emphasis added*)). Thus, our Supreme Court has concluded that enforcement of zoning regulations is not a discretionary exercise for municipal zoning officers.

Historically, Vermont zoning officers have an unsteady record in pursuing zoning violations. Neighbors here have presented compelling and generally uncontested representations of the deteriorating effects that can occur to a neighborhood when alleged zoning violations are left not prosecuted and allowed to continue. *See* Neighbors' Cross Motion for Summary Judgment filed Feb. 26, 2020, at 1–2. Neighbors also raise the concern that the nature of most zoning violations are "inherently secretive," requiring well-funded and staffed zoning enforcement practices. *See* Id. at 1 (arguing that statutory limitations disregard the fundamental public interest in correcting violations and allowing communities to "enjoy the benefits of their zoning ordinance protections"). While we recognize these issues arising from inconsistent enforcement, 204 North Avenue sets a clear precedent that zoning violations are subject to a 15-year statute of limitations.[1] In re 204 North Avenue NOV, 2019 VT 52 ¶9.

The general focus upon the prosecution of alleged zoning violations was intensified when our Supreme Court determined that a zoning violation at a residential property that was significant enough to "ha[ve] a substantial impact on the use and enjoyment of the" property could constitute an "encumbrance" upon the title to that property. Bianchi v. Lorenz, 166 Vt. 555, 558–559 (1997) (citations omitted); *see* Purvis Nonconforming Use, No. 45-5-15 Vtec, slip op. at 5–7 (Vt. Super. Ct. Envtl. Div. Jan. 27, 2016) (Durkin, J.) *aff'd on other grounds* 2019 VT 60.

---

[1] Here, Neighbors have identified a pragmatic zoning enforcement issue that has been raised previously before this Court: namely, the lax enforcement by zoning officers principally due to the lack of staff, resources, and funding to support zoning prosecutions. This, coupled with the limitations of 24 V.S.A. § 4454 (a), places further constraints on the prosecution of zoning violations, thereby allowing unpermitted uses to persist and propagate within communities. On the other hand, there is also often resentment in communities towards overly aggressive prosecutions of alleged zoning violations.

(noting that this encumbrance on title substantially impairs the purchaser's use and enjoyment of the property).[2]

While the logic and correctness of the Bianchi decision appears clear now, there were many concerns expressed after its announcement that confusion would result over zoning violations and the warranty of title that is often conveyed in real estate transactions. *See e.g.* Nelson v. Wick, No. S0322-02 Cncv, slip op. at 2–3 (Vt. Super. Ct. Mar. 03, 2004) (discussing Bianchi's impact on marketable title). In response, the Vermont legislature announced its intention to limit municipal actions against alleged zoning violations to some deadline, so as to bring some limit for when zoning violations could constitute an encumbrance upon title. *See* 24 V.S.A. § 4454; Purvis Nonconforming Use, No. 45-5-15 Vtec at 5–6 (Jan. 27, 2016); 1999, No. 46, §§ 1(a)(2), (7) (stating that the intent was to eliminate the "costs and problems arising from" the Bianchi decision); *see also* 2003, No. 115 (Adj. Sess.), §§ 101, 119(c) (amending and recodifying statute of limitations at 24 V.S.A. § 4454). That discussion eventually led to the passage of what is now codified in 24 V.S.A. § 4454(a), which states that any "action, injunction, or other enforcement proceeding relating to the failure to obtain or comply with . . . any required municipal land use permit . . . [must be] instituted within 15 years from the date the alleged violation first occurred and not thereafter . . .." 24 V.S.A. § 4454(a); *see also* In re 204 North Avenue NOV, 2019 VT 52 ¶8 ("[T]he Legislature's purpose was to streamline the title searches and increase confidence in property ownership by limiting the time to enforce all zoning violations.").

More than twenty years after Bianchi, the Supreme Court emphasized that this statutory directive meant that even prosecutions of municipal use violations, which are regarded as "a separate offense" for each day that the violation continues,[3] may not be instituted more than 15 years after the alleged violation "first occurred." 204 North Avenue NOV, 2019 VT 52, ¶¶ 6–8.

---

[2] While the Bianchi decision concerned a zoning violation on residential property, the Court relied upon a previous opinion that concerned a state subdivision permit violation on commercial property: Hunter Broadcasting, Inc. v. City of Burlington, 164 Vt. 391 (1995). The rationale announced by the Bianchi Court relied heavily upon the rationale announced by the Hunter Broadcasting Court.

[3] 24 V.S.A. § 4451(a)(3).

*In re: 15-17 Weston Street NOV, No. 40-3-19 Vtec slip op. (Vt. Super. Ct. Envtl. Div. Jan. 22, 2021) (Durkin, J.).*

The 204 North Avenue Decision altered the structure with which this Court considers when zoning violations "first occurred." Id. at ¶7.

Prior to 204 North Avenue, this Court held that "limitation provisions do not bar enforcement of even long-standing use violations because use violations are analyzed as continuing or recurring violations." Budget Inn NOV, No. 50-4-13 Vtec, slip op. at 5–6 (Vt. Super. Ct. Envtl. Div. May 05, 2015) (Durkin, J.) (citation omitted); *see also* City of St. Albans v. Hayford, No. 161-9-03 Vtec, slip op. at (Vt. Envtl. Ct. June 1, 2004) (Wright, J.). Indeed, In City of Burlington v. Richardson, this Court held that § 4454(a) does not bar an enforcement action for a use violation "from October of 1988 to the present [2006], even if they began earlier than October of 1988, because use violations are analyzed as continuing or reoccurring violations."[4] Id. at 12 (citation omitted). City of Burlington v. Richardson, No. 188-10-03 Vtec, slip op. at 12 (Vt. Envtl. Ct. June 27, 2006) (Wright, J.) (concluding that §4454 "limits the period for searching for defects in title due to hidden zoning violations to the same period applicable to searching for other title defects; it does not authorize the creation of new nonconforming uses").

The 204 North Avenue decision concluded that the statute of limitations applies to use violations and therefore, while § 4451(a)(3) allows for enforcement penalties for each day as a separate violation, a violation can not be enforced after 15 years as "continuing or reoccurring." *See* 204 North Avenue NOV, 2019 VT 52, ¶¶ 6–8 ("stating that the language "'first occurred' only makes sense for ongoing violations—such as use violations" since use violations are regarded as a separate violation for each day the violation persists); *see also* 24 V.S.A. §§ 4454(a), 4451(a)(3).

When applied to the case at bar, the City's prosecution of the Trust could be disallowed, if it were instituted more than 15 years after the Trust first began renting Unit #1 to five or more unrelated adults. Here, the Parties have stipulated that the Trust began renting on October 22, 2000 and this enforcement action was therefore brought more than 15 years after the "first occurrence" of the violation. Stipulated Facts at p. 2 ¶ 5. This, however, does not resolve

---

[4] The Court's logic in applying this interpretation of § 4454(a) sought to prohibit property owners from "initiat[ing] a new nonconforming use in violation of the municipal zoning ordinance and [thereafter] acquir[ing] a vested right to its continuation." City of Burlington v. Richardson, No. 188-10-03 Vtec, slip op. at 12 (Vt. Envtl. Ct. June 27, 2006) (Wright, J.) (*citing* In re Gregoire, 170 Vt. 556, 558 (1999); In re Appeal of Richards, 2005 VT 23, ¶6). In City of Burlington v. Richardson, the Court reasoned that the allowance of such actions would be contrary to the goal of zoning in to phasing out nonconforming uses. Id.

whether Burlington CDO § 5.3.2, the "discontinuance ordinance," acts as an exception to 24 V.S.A. § 4454.

 2. Whether the Burlington Comprehensive Development Ordinance § 5.3.2 is *ultra vires*.

Here, the Parties have stipulated that the Trust began renting Unit #1 to five or more unrelated individuals more than 15 years ago. Stipulated Facts at p. 2 ¶ 5. Therefore, pursuant to 24 V.S.A. § 4454(a), the statute of limitations would bar the City from enforcement. The remaining issue, however, lies in whether a municipal ordinance, CDO § 5.3.2, applies to provide an exception to the statute of limitations to allow enforcement of violations for uses that have been discontinued for 60 days or more.[5] Should CDO § 5.3.2 apply, a discontinued zoning violation would be disqualified from the protections proffered under 24 V.S.A. § 4454(a). *See* In re: Appeal of Vermont Lower Power TV, L.P., d/b/a Win, and Pinewood Manor, Inc., No. E96-127 Vtec, slip op. at 1–3 (Vt. Envtl. Ct. Jan. 12, 1998) (Wright, J.); Purvis Nonconforming Use, No. 45-5-15 Vtec, slip op. at 3–5 (Vt. Super. Ct. Envtl. Div. Jan. 27, 2016) (Durkin, J.); *see also* In re Huntington NOV Appeal, No. 204-8-06 Vtec, slip op. at 7 (Vt. Envtl. Ct. Apr. 25, 2007) (Durkin, J.) (discussing abandonment as a form of discontinuance).

The Trust concedes that there were two interruptions of its rental practice in 2013, when five unrelated adults no longer occupied Unit #1. The Trust asserts that these interruptions should not jeopardize its statutory protections from municipal zoning violation prosecutions since the CDO § 5.3.2 is *ultra vires*.

The City disagrees by first noting that CDO § 5.3.2 was adopted after Bianchi and 24 V.S.A. § 4454(a) and states the following:

> Although not subject to enforcement action pursuant to Article 2, uses, structures, and lots which are deemed to be controlled by the Bianchi decision, and the subsequent enactment of 24 VSA Sec. 4454, shall be considered violations that are not considered legal to any extent and shall in no event be granted the

---

[5] It is important to note here that one goal of zoning is to gradually eliminate non-conforming uses. In re Appeal of Lashins, 174 Vt. 467, 470 (2002) (citation omitted). We understand that the same must be said about zoning violations, albeit with more urgency. *See* In re Petition of Fairchild, 159 Vt. 125, 130 (1992). The continuation of non-conforming uses "is carefully limited," since the "public interest in the regulation and gradual elimination of nonconforming uses is strong ...." In re Appeal of Gregoire, 170 Vt. 556, 559 (1999) (citation omitted). Zoning ordinances that limit the application of lawful, preexisting nonconforming use protections to those uses that have not been discontinued or abandoned provide an avenue to serve this goal.

consideration or allowances of nonconforming structures, uses, and lots. Thus, no change, alteration, enlargement, and reestablishment after discontinuance for more than sixty (60) days or reconstruction after an occurrence or event which destroys at least 50% of the structure in the judgment of the city's building inspector shall be permitted, except to a conforming use, structure, or lot.

CDO § 5.3.2: "Bianchi" controlled uses, structures, and lots.

In its reliance upon the language of CDO § 5.3.2, the City notes that while the Trust's renting of Unit #1 to five unrelated adults would have been an un-prosecutable zoning violation, that violation was discontinued for more than 60 days on two occasions in 2013 and 2014. Pursuant to this CDO provision, a discontinuance for more than 60 days prohibited the reestablishment of the violation and established that the only allowed use of Unit #1 would be a use that conformed to the CDO occupancy requirements.[6]

The Trust counters that this Court should ignore the CDO's 60-day limitation on its discontinuance and reestablishment of a zoning violation as *ultra vires*. The Trust asserts that because there is no legislative authority to enact an ordinance that limits the ability to reestablish a prior zoning violation, we should regard CDO § 5.3.2 as *ultra vires* under the doctrine of *Dillon's Rule*. While the Trust is correct that Vermont is not regarded as a *home rule* state, it places too much significance upon CDO § 5.3.2 to regard it as an independent "statute of limitations" determination, not authorized by legislative enactment.

By allowing or causing the violations concerning occupancy of Unit #1 to cease, the Trust allowed the Unit #1 occupancy to lose the protections provided to long-standing zoning violations. In the summer of 2013 and then again in the spring of 2014, the occupancy of Unit #1 conformed to CDO § 4.4.5(C), since Unit #1 returned to an occupancy of four or fewer unrelated adults.[7] The Trust provides us with no legal authority, other than an overly expansive reading of the 204 North Avenue NOV decision, for the proposition that a property owner can change a conforming use into a nonconforming zoning violation.

---

[6]  The CDO limits residential density in the RL and other residential zoning districts to "members of a family, as defined in Article 13 . . .." CDO § 4.4.5(C). The CDO defines the term "family" in five subsets, the last of which is "[n]o more than four unrelated adults and their minor children." CDO § 13(F)(e).

[7] *See also* CDO § 13(F)(e).

*In re: 15-17 Weston Street NOV*, No. 40-3-19 Vtec slip op. (Vt. Super. Ct. Envtl. Div. Jan. 22, 2021) (Durkin, J.).

Our Supreme Court has repeatedly upheld zoning regulations as a valid exercise of the police power of our municipal governments. *See* Galanes v. Town of Brattleboro, 136 Vt. 235, 240 (1978); *see* Appeal of Van Nostrand, No. 209-11-04 Vtec, slip op. at 6 n. 5 (Vt. Envtl. Ct. Jan. 13, 2006) (Durkin, J.) ("Municipalities are authorized to regulate nonconformities in general, and nonconforming lots in particular . . .."). The Court has also repeatedly noted that a primary purpose behind the authorization and enactment of zoning regulations "is to bring about the orderly physical development of a community by confining particular uses to defined areas." Vermont Brick & Block, Inc. v. Village of Essex Jct., 135 Vt. 481, 483 (1977) (citing DeWitt v. Brattleboro Zoning Board of Adjustment, 128 Vt. 313, 323 (1970)). To accomplish this primary purpose, a goal of zoning is to gradually eliminate uses that do not conform with the current zoning regulations "because they are antecedent to the zoning regulations." Id.; *see* In re McCormick Management Co., 149 Vt. 585, 589 (1988); *see also* Hinsdale v. Village of Essex Jct., 153 Vt. 618, 626 (1990).

Under this statutory authorization, a municipality is authorized to identify allowed uses or development and is authorized to identify prohibited uses or development. We regard CDO § 5.2.3 as nothing more than a statutorily authorized description of when a prohibited use must cease.

By the Trust's reasoning, we should ignore this precedent and conclude that the City's acknowledgement of what transpires when a property ceases to violate a zoning regulation and comes into conformance with those regulations is not authorized by a specific enabling statute. Quite the contrary, the very fact that municipalities are authorized to enact zoning regulations that restrict the use and development of property is the foundation for a municipality's authority to classify what constitutes lawful uses, determine what constitutes a zoning violation, and to prohibit those violations from reoccurring. *See*, 24 V.S.A § 4411(a) (authorizing the enactment of zoning bylaws to regulate land development).

The Trust seeks, by analogy, to have its zoning violation receive the same protections as lawful nonconforming uses. But these two classifications of land uses are quite different: one is lawful, and the other is not. *See*, Purvis Nonconforming Use, No. 45-5-15 Vtec at 8 (Jan. 26, 2016).

The Trust acknowledges this significant difference between lawful nonconformities and zoning violations by its own reference to <u>Purvis</u>, but asserts that this Court's acknowledgement in <u>Purvis</u> of CDO § 5.2.3 as a "limitation statute [sic; the Trust's characterization]" was an error. *See* Trust's Motion for Summary Judgment filed Feb 21, 2020 at 5.

We first note that it is inappropriate for us to allow <u>Purvis</u> to be relitigated in this later appeal. But we also note that, were we to adopt the Trust's interpretation of the Supreme Court decision in <u>204 North Avenue</u>, zoning violations, once they "first occurred," would be allowed to be reestablished forever, whether they were ceased and then reestablished after five days, five months, or five years. This would afford a zoning violator much more in the way of vested rights than our law now recognizes for lawful nonconformities. We conclude that this would lead to an illogical and absurd result and therefore respectfully decline to adopt the Trust's reasoning.

We therefore view CDO § 5.2.3 as a mere acknowledgement of the established legal doctrine that once a violation of a zoning regulation ceases, the owner cannot thereafter reestablish that violation, particularly to replace a conforming use. For all these reasons, we conclude that CDO § 5.2.3 is not void under the doctrine of *ultra vires*, but merely represents a codification of existing law, which prohibits the replacement of a lawful land use with one that is unlawful, whether it previously existed or not. In fact, CDO § 5.2.3 affords a zoning violator some greater protection, since the prohibition against reestablishing the zoning violation only is activated when the violation ceases to exist for 60 or more days. Therefore, we conclude that CDO § 5.3.2 serves the lawful interest of diminishing violations and nonconformities by withdrawing the protections provided, including the limitations barring enforcement contained in 24 V.S.A. § 4454, against long-standing zoning violations that are discontinued for more than 60 days.

The Trust offers no dispute that the specific language of § 5.3.2 requires that we conclude that its un-prosecutable zoning violation had been discontinued for a sufficient period of time, such that the language of the CDO would now require that the Trust only be allowed to reestablish a use of Unit #1 that conforms with the density restrictions of CDO § 4.4.5(C). Thus, we hold that absent a compelling reason for why CDO § 5.2.3 should not be allowed to apply, the Trust cannot continue to rent Unit #1 to five or more unrelated adults.

-11-

3.  Whether the Trust's rental of Unit #1 was previously litigated in a manner that would bar this NOV.

The Trust also asserts that due to prior municipal permit proceedings concerning its property, its current rental of Unit #1 should be regarded as either an authorized use, or as a lawful, but now non-conforming use of the property.  For the reasons discussed below, we conclude that the facts presented here do not support this legal conclusion.

Interestingly, both parties only rely upon recitations of what occurred in the 1972 and 1994 permit proceedings; the Court has not been provided with the applications, supporting materials, or the ZBA or DRB determinations in those prior permit proceedings.  We therefore recite the history of those permit proceedings based upon the parties' undocumented representations.  We rely upon these representations because they are not contested.  The parties merely contest the legal consequences that flow from these prior permit proceedings.

In 1972 and 1994, prior versions of the City's zoning regulations governed City land uses.  Rather than implore us to review the maze of those prior zoning regulations, the parties refer us to a succinct summary that this Court provided in 2017 litigation of the provisions of those prior regulations that would govern the legal issues of dwelling unit and occupancy:

> 17.   In January 1947, the City adopted its first zoning ordinance which defined "apartment house" as "a building or portion thereof used or designed to be used as a residence for three or more families living as units independently of one another."
>
> 18.   "Family" was not defined in these regulations.
>
> 19.   On December 21, 1970, the City adopted "An Ordinance in Relation to Zoning and Planning – Municipal Zoning."  (hereinafter, "the December 1970 Ordinance").
>
> 20.   The December 1970 Ordinance amended the zoning ordinance to define "family" as "one or more persons occupying a dwelling unit and living as a single nonprofit housekeeping unit, but not including group quarters such as dormitories, sororities, fraternities, convents, and communes."
>
> 21.   On October 16, 2000, the definition of "family" was amended, in relevant part, limiting the term to "no more than four unrelated adults and their minor children."
>
> 22.   This definition of "family" currently remains in effect.

In re Diemer Apartments, LLC Denial, No. 20-2-16 Vtec, slip op. at 3–4 (Vt. Super. Ct. Envtl. Div. Dec. 29, 2017) (Durkin, J.).

-12-

Sometime prior to 1972, the then owner of 15-17 Weston Street was apparently notified that they needed permission to convert what had previously been a two-unit apartment building into a three-unit apartment building. At that time, a residential building with three or more dwelling units was defined as an "apartment house" and required specific exemption or approval. The then owner applied for and received a special exemption for his property, so that it could continue to be operated as a three-unit apartment building. We are told by both parties here that this special exemption did not recite who could lawfully occupy the dwelling units at 15–17 Weston Street.

The Trust asserts that in the absence of a specific restriction in 1972 on who could occupy those apartments, this special exemption determination established that any number of non-related adults could occupy what is now Unit #1. Respectfully, we cannot follow this logic. On the scant record before us, it appears that the only legal issue presented in this 1972 application was whether the then owner should be afforded a special exception to operate the building with an already existing, extra third dwelling unit. Id. at 4–12. There is no representation that the 1972 application referenced the planned occupancy of the apartment; there is no representation that the then zoning board required or asked about the planned occupancy; and there is no representation that the then zoning board established a specific condition concerning occupancy in its decision. *See* Id. With this scant record, we cannot rely upon this history to determine that the occupancy of Unit #1 by five or more non-related adulted was established or authorized in 1972.

In fact, the only record before us speaks against this conclusion. The parties agree that the regulations at the time directed that residential dwelling units may be occupied by a "family," defined as "one or more persons occupying a dwelling unit and living as a single nonprofit housekeeping unit, but not including group quarters such as dormitories, sororities, fraternities, convents, and communes." Id. at 4 (*emphasis added*).

Interestingly, the Trust directs this Court to two decisions in an earlier appeal, filed nearly twenty years ago: In re Appeal of John Mentes, No. 132-6-00 Vtec (Vt. Envtl. Ct. Oct 22, 2001) (Wright, J.). In a decision rendered on October 22, 2001, this Court denied cross-motions for summary judgment filed by the then-owner of a residential rental dwelling, as well as his

-13-

neighbor, who requested that the owner's renting to seven unrelated students constituted "group quarters" and not a single -family home.  Id. at 1.  The Court concluded that neither the owner nor the neighbor was entitled to summary judgment at that time.  Id. at 3.

In a subsequent decision, the Court apparently reviewed additional briefing and evidence presented by the parties and concluded that the rental of the dwelling by seven unrelated students most closely fit the regulatory definition of "group quarters" and was therefore prohibited under the existing regulations.  In re Appeal of John Mentes, No. 132-6-00 Vtec, slip op. at 2 (Vt. Envtl. Ct. May 10, 2002) (Wright, J.).

The two decisions in the Mentes appeal, cited above, are not models of clarity.  But it is indisputable that they do not evidence a determination that occupancy by unrelated students was then regarded as a lawful use.  We therefore cannot rely upon the precedent of Mentes to conclude that the occupancy of Unit #1 now rented to five unrelated adults constituted an authorized use.

The Trust also refers us to a 1994 zoning determination.  By that time, the then owner of 15–17 Weston Street had converted the inside of the building to include a fourth rental apartment.  When confronted with this unpermitted improvement, the then owner applied for conditional use approval for the fourth dwelling unit.  The zoning board denied that application.  That determination became final when no successful appeal was lodged.

The Trust now appears to assert that the zoning board in 1994 should have also directed the then owner to restrict the occupancy of the lawful three dwelling units to conform with the zoning regulations.[8]  Again, in regard to the affirmative duty asserted against the 1994 zoning board, we have difficulty in following the Trust's logic.  There is no evidence before us that occupancy of any of the property's dwelling units was an issue raised by the then applicant or considered by the then zoning board.  We have no board determination before us that speaks to occupancy.  In fact, the board denied the pending application.  We therefore cannot rely upon this prior permit proceeding to support the Trust's current assertion that its rental of Unit #1 to five un-related adults is now a lawful, pre-existing nonconforming use.

---

[8]  Note that only the legality of the fourth, unpermitted rental unit was at issue in the 1994 permit proceedings.

We agree with the City's assertion that what was adjudicated in 1994 was not an enforcement action and it did not concern the lawful occupancy of the other three dwelling units at 15–17 Weston Street. The Trust's assertion that the 1994 proceeding was "a bylaw compliance claim" is a mischaracterization of the 1994 proceeding. While it is apparently true that the then owner improved the building with a fourth apartment without first receiving zoning approval, the City zoning officer did not serve that owner with a notice of alleged zoning violation; nor did the City institute an enforcement action. The City simply notified that owner that he needed to apply for conditional use approval for that fourth apartment, and the owner apparently did so.

Therefore, on the record before us, we conclude that the only legal issue before the zoning board in 1994 was whether the already-improved fourth apartment could be allowed under the existing zoning regulations. The Board concluded that it could not, and there is no evidence that the owner successfully appealed that denial. In fact, it appears that after this permit denial for the fourth apartment, the then owner returned the property to a three-unit apartment building.

To now assert, some twenty-six years later, that the zoning board in 1994 "should have" also alerted the then owner to a possible zoning violation concerning occupancy of the three other apartments is beyond the pale. In fact, we do not have any representations before us that the occupancy of what is now Unit #1 was then somehow violative of the then-existing zoning regulations.

Conversely, based upon an unsubstantiated assertion that five or more un-related adults in 1994 occupied what is now Unit #1, the Trust alternately asserts that because the zoning board in 1994 did not include a specific reference to an occupancy limit, such a non-determination would run afoul of the precedent of in re Kostenblatt[9] and its progeny that restrictions on a property "must be explicit in order to provide notice of all conditions imposed" upon the land. Appellant's Reply Memorandum in Support of Summary Judgment filed April 27, 2020, at 2. This

---

[9] In re Kostenblatt held that "[c]onditions imposed by a zoning board must be expressed with sufficient clarity to give notice of the limitations on the use of the land, and cannot incorporate by reference statements made by an applicant at a hearing." In re Kostenblatt ,161 Vt. 292, 298 (1994) (*citing* In re Farrell & Desautels, Inc., 135 Vt. 614, 617 (1978). ); *see*, Trust's Reply Memorandum in Support of Motion for Summary Judgment on Grounds of Statutory Finality, Claims Preclusion, and Nonconforming Use filed April 27, 2020, at 2–3.

statement as to precent is generally accurate, but has no relevance in a case, such as here, where the application never referenced occupancy and the applicable regulations governing the application did not require a consideration of occupancy. The 1994 zoning board decision did not mention occupancy limits for any apartments because that was never an issue raised or required in that proceeding. The fact that the 1994 zoning board decision did not mention occupancy limits cannot be grounds for this Court to now conclude that the Trust's property enjoys a pre-existing, nonconforming right to rent Unit #1 without occupation limits.

## Conclusions

For all these reasons, we **DENY** the Trust's summary judgment motion and **GRANT** the Neighbors' summary judgment motion. As a consequence of the determinations here, we answer Appellant Trust's Statement of Questions in the following manner:

**Question 1**: we answer in the negative, since we conclude that the pending NOV is not barred by 24 V.S.A. § 4472(d);

**Question 2**: we also answer in the negative, since we conclude that the pending NOV is not barred by the doctrines of *re judicata*/claim preclusion or collateral estoppel/issue preclusion;

**Question 3**: similarly, we answer in the negative, since we conclude that the pending NOV is not barred by the doctrine of equitable estoppel;

**Question 4**: the allowance of five or more unrelated adults to rent and occupy Unit #1 does not constitute a lawful, pre-existing, nonconforming use;

**Question 5**: the pending NOV is not barred by 24 V.S.A. § 4454(a); and

**Question 6 and 7**: Both of these Questions raise challenges to the constitutionality of the imposition of fines *pendente lite*.[10] However, since the City has not yet filed an enforcement action, we regard these Questions as not judiciable in this proceeding. The only issues presented in this appeal are challenges to the pending NOV; the City may not assert or impose fines in connection with that NOV unless and until it initiates a zoning enforcement action. *See* V.R.E.C.P. 4.

---

[10] During litigation.

*In re: 15-17 Weston Street NOV*, No. 40-3-19 Vtec slip op. (Vt. Super. Ct. Envtl. Div. Jan. 22, 2021) (Durkin, J.).

For all these reasons, we **AFFIRM** the notice of alleged zoning violation dated October 30, 2018 and served upon the Keith S. Aaron Weston Street Trust, owner of the property at 15–17 Weston Street.

This completes the current proceedings before this Court concerning this appeal. A Judgment Order accompanies this Decision.


Electronically signed on January 22, 2021 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division

*In re: 15-17 Weston Street NOV*, No. 40-3-19 *Vtec slip op. (Vt. Super. Ct. Envtl. Div. Jan. 22, 2021) (Durkin, J.).*